## JULIA BARTELS V. CITY OF HOUSTON.

### Decided May 6, 1903.

**Cities—Grant of Street—Grading—Damages.**

   Where land was deeded by plaintiff to a city for street purposes, and in order to build a bridge to extend the street the city made a cut in front of plaintiff's property, rendering it difficult of access, and the bridge could have been built without making the cut, although at greater expense to the city, plaintiff was entitled to recover for the damage thus done to her property, and did not, by the execution of the deed, consent to the injury occasioned by such extension.

   Appeal from the District Court of Harris. Tried below before Hon. Wm. H. Wilson.

   *Ira P. Jones,* for appellant.

   *T. H. Stone,* for appellee.

   JAMES, CHIEF JUSTICE.—The petition of Julia Bartels alleges in substance that she owns a tract of about fifteen acres of land which she subdivided in 1893, by which she dedicated to the city Houston Avenue and lateral streets in said subdivision, which dedication was not accepted; that about March 21, 1900, she deeded to the city for a consideration the right of way over a strip for Houston Avenue 80 feet in width by 750 feet in length to the bank of White Oak Bayou for the purpose of a public street. That she had houses facing on said avenue; that shortly thereafter the city undertook the construction of a bridge across said bayou in the extension of said avenue, and excavated the avenue a depth of 12 feet by a width of 60 feet in front of her property and placed the dirt taken from the excavation at the approach to the bridge, forming an embankment about 12 feet in height and about 195 feet in length to connect with the excavated portions of said avenue. The purpose of the action was to recover damages by reason of the depreciation in value of her property so fronting on Houston Avenue where said excavation was made and said embankment erected, alleging that she had been deprived of ingress and egress to and from her property. She also alleged that at the time of the execution of the deed she had no notice or knowledge of appellee's intention to make said excavation or embankments, and that she had never consented thereto nor waived her claim for damages.

It is not thought necessary to state the defenses.

The facts that control this case are practically undisputed. Plaintiff owned a subdivided tract of about fifteen acres. The subdivision was made in 1893, but the rights of the parties in respect to the subject of this controversy do not depend on the dedication of the streets in said subdivision (which dedication appears not to have been effectual, nor so regarded by the parties), but upon a deed of sale executed by Mrs. Bartels to the city for Houston Avenue and intersecting streets, for street purposes. At that time the land upon and near Houston Avenue was practically level, except where it sloped down at the bayou. Houston Street, as defined in the deed, terminated at White Oak Bayou. After this sale the city constructed a bridge over the bayou at this terminus of Houston Avenue to make it accessible as a thoroughfare to and from the city. This bridge was built to a certain height, and to adapt Houston Avenue to the elevation of the bridge the city excavated the avenue for a considerable distance, using the earth in constructing, by filling in, the approaches to the bridge. This excavation was to such depth that ingress and egress was seriously obstructed or prevented, in reference to plaintiff's property on both sides of the avenue, where she has her residence, and other houses for rent, thereby materially depreciating its value. An important fact in the case, and one which we ascertain all the witnesses testified to, is that it was practicable to build the bridge higher than it was built, and by so doing the excavation of Houston Avenue, if any, would not have been such as to materially affect the property of plaintiff.

The jury were charged that Mrs. Bartels, having deeded the strip to the city for use as a street, could not recover damages for depreciation in value of her property, unless the same resulted from a want of ordinary care and skill in the location and construction of said street, for the reason, as the charge stated, that by such deed she is conclusively presumed to have assented to any injury that incidentally resulted for the location and construction of the street in a proper manner. They were instructed to find for plaintiff if they believed the excavation and embankment were not necessary or proper in the construction of the street under all the circumstances, or that it being made as it was, was due to a lack of ordinary care and skill.

According to our views of the law applicable to the evidence, this charge was erroneous. As we read the testimony, it conclusively shows that the excavation was neither necessary nor proper. The testimony of appellee's witnesses, Lewis and Gillespie, shows as conclusively as that of appellant's witnesses, that if the bridge had been built a certain distance higher, it would have been connected with Houston Avenue at an elevation which would have obviated the cutting down of the avenue, and that it could have been so built. Mr. Lewis testified that the bridge, as built, was no engineering mistake; that a bridge that would do away with the necessity of excavating the avenue would have to be built twenty feet higher and over 1000 feet in length, and would cost over

$8000, while the entire cost of the present bridge, with the grading, did not exceed $1800; that he thought it would be trifling for an engineer to report a proposition of that kind. That he did not consider the building of such a bridge as feasible or practicable. It would be throwing away money. He did not consider such a bridge necessary. He did not think the building of a bridge at that point justified any such expense. There might have been more work done there as a matter of course, and a great deal of expense to the city might have been incurred, but considering the purposes for which it was intended, it answers all purposes fully and satisfactorily.

He went on further to testify: "Of course you can build a bridge across there ten, twenty or thirty feet higher; they could have done that had they wanted to. To have built a bridge ten feet higher would have been much more expensive. Of course the same flooring would have done, but the bridge would have to be longer, and there would have had to be longer piling, and the embankment would have been ten feet higher at the ends of the bridge. I have explained that trestle could have been built from each bank, but that would be expensive."

Mr. Gillespie testified substantially as to the difference in cost between the bridge as built and a higher one that would have avoided the cutting down of the avenue. His testimony, when summed up, is also that the bridge could have been built higher, and the obstacle to its practicability was the increased cost.

The practicability of building the bridge in such a way as to connect with the streets without damaging plaintiff's property as was done, is clearly established even by the testimony of these experts. It is plainly to be seen from their testimony that when they speak of the impracticability of constructing the bridge to such height, they refer merely to the fact that the cost to the city would have been very much greater, more than the city ought to pay out for a bridge at that place. They both approved the bridge and the excavation as constructed, because it was, in an engineering sense, properly conceived and properly carried out, after considering everything that a skilled engineer would consider, the smallest possible outlay to the city consistent with the safety and excellence of the bridge being the determining factor.

We might go so far as to adopt, for the purposes of this opinion, the theory that a sale and conveyance of the avenue for street purposes carried with it the owner's consent to have the avenue lowered to accommodate an extension of the avenue over a bridge to be constructed across the bayou, still we would be unable to hold that the city had a right to build the bridge so as to necessitate injury to plaintiff's property when it could have so built it as to avoid such result.

Inasmuch as it clearly appears that this excavation need not have been done, and that it was done because the city chose for its own convenience to erect a bridge at a certain elevation that cost less than one which it could have built without necessitating the excavation. it seems

to us that a charge which submits the case upon the issue of whether or not the work was necessary and proper was entirely inapplicable.

The deed of itself could not possibly have involved plaintiff's consent to anything except what was necessary and proper to be done towards adapting Houston Avenue to the uses of a street, in view of what was in contemplation of the parties at the time as to its future use, and here it clearly appears that it was not necessary to have excavated it as was done, but that it was so done to subserve merely the convenience of the city. The consent of plaintiff to the work as done must be shown in some manner other than by force of the deed itself. There is some evidence, that of Mr. Brashear, who was mayor of Houston at the time the deed was made, which somewhat remotely tends to show that the work was going on when the deed was made, and it may be that plaintiff made the deed with knowledge on her part and in contemplation of the very things she now complains of, and that in this manner she consented to them. But this is hardly sufficiently developed in the evidence to entitle it to notice here, and no submission of the case on any such theory of consent was made or requested; and we think that whether or not such circumstance would estop her, need not be discussed, in view of the uncertain terms of Mr. Brashear's testimony.

The surface of plaintiff's subdivision being practicably level, there could be no serious contention that, apart from the bridge, there existed any necessity or propriety of cutting it down to the extent as was done, in order to make it serve the purposes of a street. Plaintiff's consent may have been implied from her deed for the purposes of a street to do with it whatever was required or was proper for such use, but it is too plain for argument that the excavation complained of was neither necessary nor proper, unless it should be so declared in connection with the extension of the street over the bridge, and this was not so on the testimony adduced, as we have shown.

The evidence will in all probability be similar on another trial, and it may be going out of our way to discuss the law in reference to other conditions, but we think that even if it were shown that the bridge could not have been built higher than it now is, or without damaging plaintiff, still plaintiff, by our constitutional provision, would be entitled to recover such damages as she sustained, unless it appear, apart from the effect of the deed itself, that she consented to the work being done in the manner in which it was done.

For these reasons the judgment is reversed and the cause remanded.

*Reversed and remanded.*