**STATE** et al. **v. HALE** et ux.

No. 8186.

Court of Civil Appeals of Texas. Austin.

July 1, 1936.

Rehearing Denied July 22, 1936.

James V. Allred, Atty. Gen. (T. S. Christopher, of Fort Worth, M. W. Burch, of Decatur, and John L. Green, of Austin, of counsel), for appellants.

Polk Shelton, of Austin, and Bradley & Bradley, of Groesbeck, for appellees.

McCLENDON, Chief Justice.

This suit was brought by Hale and wife (appellees) against the state and the state highway commission (appellants), under chapter 72, p. 160, Special Laws 42d Leg., Reg.Sess.1931. The caption of the act reads: "An Act giving to W. S. Hale and wife, Mary D. Hale, consent of the Legislature to sue the State of Texas and State Highway Commission for damages resulting from the construction of State Highway No. 43 through Leon County, Texas; and declaring an emergency."

The pertinent provisions of the act are sections 1 and 2, which read:

"Section 1. That the consent of the Legislature of the State of Texas is hereby given to W. S. Hale and wife, Mary D. Hale, his executor, administrator and heirs to file and prosecute suit against the State of Texas and the State Highway Commission by reason of the alleged negligence in construction of State Highway No. 43 in and through Leon County, Texas, which construction was begun in July, 1927, and especially by reason of the constructing of said Highway in such manner as to overflow and otherwise damage the lands of said Hale. Said suit shall be brought in Travis County, Texas.

"Sec. 2. The State and said Commission may appeal from said judgment, as provided by Law, without executing any bond, and, upon the final judgment being recovered against said defendants, the same shall be paid out of the State Highway Funds."

The judgment was for Hale and wife for $52,544.52, of which sum $37,800 was the amount of damage assessed by the jury, and $14,744.52 was interest thereon at 6 per cent. per annum from September 1, 1927, to the date of judgment, June 11, 1934. The judgment bears legal interest from its date.

The farm, consisting of several contiguous tracts aggregating 1,400 acres, was operated as a unit. It was located on the east bank of Keechi creek, and north of and abutting upon an old road which crossed the creek bottom (about 3,400 feet wide between the foothills) at this point. In July, 1927, the Highway Department began the construction of Highway 43 by building a temporary road (completed in August, 1927) consisting of a dump across the bottom some 2.5 to 5 or 6 feet (the testimony varying on this point) above the natural surface of the adjacent land. In this dump two openings for drainage were left—one 147 feet wide at a slough crossing, and the other 174 at the creek crossing. The old road was not substantially higher than the surface of the adjacent land. The permanent highway was constructed some time later, with much wider openings (440 and 680 feet, respectively). The damage sued and recovered for was permanent injury to the land by reason of obstructing the natural flow of the flood waters (which theretofore had passed unimpeded over the old roadway), thereby depositing large quantities of sand and other substances on the land and impairing its productivity and use for the growing of crops. It was the theory of defendants that the permission to sue was limited to injuries caused by the temporary roadway. Since the court adopted this theory in submitting the special issues to the jury, it need not be further noted.

In 1930 plaintiffs conveyed to the county for highway purposes a strip of land off the farm containing approximately 13 acres for $500 cash. This strip was purchased in order to give necessary right of way width to Highway 43.

The special issues and the jury's answers follow:

"1. Do you find from a preponderance of the evidence that the land of the plaintiff W. S. Hale and his wife Mary D. Hale was injured by reason of the construction by the State of Texas of the temporary or old highway dump on highway No. 43 across the bottom of Keechi Creek adjacent to the south end of the Hale farm?" Answer: "Yes."

"2. Was the temporary or old highway dump on State Highway 43 constructed in such a manner as to cause overflow of the property or farm of plaintiffs in this case?" Answer: "Yes."

"3. How many acres of the land of W. S. Hale and his wife Mary D. Hale, plaintiffs in this case, were caused to be overflowed by the construction of the aforesaid dump on which sand or other substances injurious to the growing of crops were deposited?" Answer: "500 acres."

"4. (a) What was the reasonable cash market value, or if no reasonable cash market value, the intrinsic value, of the Hale farm per acre immediately before the construction of the temporary or old highway dump on highway 43 adjacent to the south end of the Hale farm in July, 1927?" Answer: "$75.00 per acre on entire farm."

"4. (b) What was the reasonable cash market value, or if no reasonable cash market value, the intrinsic value, of said property immediately after the completion of the aforesaid dump in August, 1927?" Answer: "$48.00 per acre on entire farm."

No objection or exception was made by defendants to any portion of the charge or special issues, and no special charges or issues were requested by them.

Appellants' assignments of error (34 in number) embodied in their motion for new trial are copied verbatim and in full in their brief. These assignments, or such of them as are briefed at all, are briefed under ten propositions which urge, in substance, the following points:

1. The general demurrer should have been sustained and a verdict for defendants directed because (a) the act authorizing the suit and (b) the jury findings are limited to acts of negligence for which the state is not liable (Props. 1 and 3).

2. The general demurrer should have been sustained because construction of the highway was a governmental function, and there was no liability for consequential damages, absent allegations that the Highway Department was not acting under lawful authority, or that its action was arbitrary or an abuse of its discretion (Prop. 2).

3. It was error to admit evidence of injury to crops before or after 1927, or evidence of the value of houses, barns, and

other improvements on the land (Props. 4 and 7).

4. The court should have instructed the jury that such testimony was offered and could be by them considered only in arriving at the value of the land before and after the road was constructed (Prop. 5).

5. Appellees' deed to the 13 acres, being for highway purposes, constituted compensation for consequential damage to the rest of the farm.

6. The state is not liable in any event for interest (Prop. 8).

7. The judgment should not have exceeded $13,500, or $27.00 per acre, for the land actually overflowed.

8. The judgment is excessive as a matter of law under the evidence.

It is not contended that the act under which the suit was brought attempted to create a liability against the state, or that it did more than give the state's consent to sue upon an existent cause of action, which might have been enforced independently of the act, but for the fact that the state cannot be sued in its own courts without its consent. See Brooks v. State (Tex.Civ.App.) 68 S.W.(2d) 534 (error refused).

It is conceded that the Highway Department is an agency of the state, created for the purpose of constructing and maintaining state highways; that its acts within its delegated authority are acts of the state; that its liability for those acts is the liability of the state; and that a suit against it, predicated upon such acts, is in effect a suit against the state. Herring v. Houston Nat. Exch. Bank, 113 Tex. 264, 253 S.W. 813.

■ This suit is maintainable only upon the theory that the construction of the highway constituted a taking or damaging of plaintiffs' property for a public use. Texas Const. art. 1, § 17.

■ That the state is not liable for the torts of its agents is not controverted. Brooks v. State, supra. It may therefore be conceded that if the enabling act gave the legislative consent to sue only for consequential damages resulting from a negligent or tortious manner in which the highway was constructed, the consent thus given was a mere fruitless gesture, conferring the bare right to sue upon a nonexistent cause of action. Giving full weight to the doctrine of strict construction as applied to this character of legislative action, we think the act, fairly and reasonably interpreted, especially in the light of the surrounding circumstances, must be construed as giving legislative consent to sue upon whatever cause of action the Hales might have against the state and its agency, the highway commission, for damages resulting from the construction of the highway. The caption of the act so states specifically and explicitly. The language of section 1, upon which appellants rely for their contention in this regard, is "consent * * * to file and prosecute suit * * * by reason of the alleged negligence in construction of State Highway No. 43 * * * and especially by reason of the constructing of said Highway in such manner as to overflow and otherwise damage the lands of said Hale." Of course this language, taken alone, might be construed as being limited to negligent construction. That, however, is by no means the only construction of which it is susceptible; and when interpreted in the light of the caption, which sets forth the purpose of the act, and in the light of the surrounding circumstances, it would be an extremely narrow and technical one, and one not in accord with the purpose and spirit of the act, nor one which the language fairly and reasonably imports.

■ It is a familiar canon of construction of all writings, and one of ancient standing and universal application, that the objective of the instrument, the purpose or result sought to be accomplished, is a consideration of prime importance. This canon has peculiar application to the interpretation of legislative acts. As was said in Ferguson v. Johnson (Tex.Civ.App.) 57 S.W.(2d) 372, 377: "Where the literal, grammatical, or dictionary interpretation of the language would defeat or substantially impair effectuation of the legislative objective, the wording in which the Legislature has clothed its mandate will not be given controlling effect."

■ We construe the act as giving consent to bring suit for the establishment vel non of an existent liability for consequential and recoverable damage resulting from construction of the highway "in such manner as to overflow and otherwise damage the lands of said Hale."

It becomes necessary, therefore, to consider whether there was such existent liability, and if so in what it consisted.

Article 1 (Bill of Rights), § 17, of the Texas Constitution provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without

adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money."

We are not here concerned with interruptions of the ordinary flow of mere surface waters, as to which there are two rules governing liability. See 27 R.C.L. pp. 1139 et seq. The rule in Texas, independently of statute, is announced in Barnett v. Matagorda Rice Co., 98 Tex. 355, 83 S.W. 801, 107 Am.St.Rep. 636.

■ As applied to streams the rule is well settled that the upper riparian owner is entitled to the uninterrupted flow of the waters, and the lower owners are "bound to receive it though it floods their lands." "The right of the continued existence of these conditions is property, to protect which the owner may resort to any or all of the instrumentalities which may be employed for the protection of private property rights." 27 R.C.L. p. 1093, notes 7, 8, and 9.

This property right comes squarely within the quoted constitutional provision, and damage resulting from its invasion for a public use imposes upon the one so damaging it liability for "adequate compensation."

■ The state has the unquestioned right to damage private property for public use. The exercise of this right does not constitute the commission of a tort. A tort is a legal wrong and necessarily excludes the existence of a legal right, of which it is the antithesis. Actionable negligence is essentially a tort, and necessarily connotes the doing of something which is unlawful or doing it in an unlawful manner. It arises from the breach of an existing legal duty.

■ It is axiomatic that the state has the inherent right to damage property for a public use. No duty is imposed upon it not to do so. The obligation to render to the owner adequate compensation is one which is imposed, not for the commission of a wrongful, tortious act, but in the exercise of a lawful right.

The state has vested in the highway commission the authority and charged it with the duty to designate, lay out, and construct state highways.

"To the members of the commission and in large measure to its chief engineer are intrusted responsibilities of outstanding importance. To meet these responsibilities they are invested with a wide discretion. This is of necessity so from the very nature of their duties." Johnson v. Ferguson (Tex.Civ.App.) 55 S.W. (2d) 153, 160.

■ It is manifest that in the construction of state highways, to meet the rapidly increasing demands of existing and reasonably to be anticipated prospective conditions, many problems are to be met which involve a variety of considerations, not alone of engineering skill, but also of financing. The effect of highway construction upon adjacent property is of course a consideration which should always be held in view; and it may be conceded that sufficient drainage should be provided to guard against consequential damage to such property, in so far as this is practical. It it readily apparent, however, that damage from this source is not always avoidable, except at a cost which would be prohibitive; and that in some instances the interest of the state may demand a type or manner of construction which will necessarily result in damage. Such damage falls within the purview of the Constitution, as being one for a public use, imposing the obligation adequately to compensate the owner therefor.

■ It is conceivable that acts of the highway commission in carrying out the legislative mandate might be so arbitrary and unreasonable as to amount to an abuse of its authority, and an unwarranted use of its delegated powers. In such case the acts of the commission would be wrongful and illegal, and appropriate remedy by injunction or otherwise could be had against the individuals who were responsible for such action. Being in excess of delegated authority, such acts would be those of such individuals and not of the state. But where the acts as done or contemplated come within the delegated discretionary authority of the commission, and that discretion is not exceeded or abused, such acts are those of the state; and consequential recoverable damage is a liability of the state. This distinction is clearly drawn and stated in Nussbaum v. Bell County, 97 Tex. 86, 76 S.W. 430.

With the exceptions noted below, the authorities in this state are uniform that the taking or damaging of private property for public road purposes by an agency vested by law with authority to do so, falls within the above constitutional

provision. This doctrine was announced as to taking in the early case of Watkins v. Walker County, 18 Tex. 585, 586, 70 Am.Dec. 298. That was a suit by a landowner against the county for the value of timber cut from his land by the county road overseer and used in constructing a bridge. The county was held liable under the then (section 14, art. 1) constitutional provision, and a statute which provided that, "when to the overseer of the road it may appear expedient to make causeways and build bridges, the timber most convenient may be used." Acts 5th Leg., p. 40, § 17. In discussing the subject the court say: "There may be cases where the right of the public rests upon a principle of necessity, which will justify the appropriation or destruction of private property, without rendering the public liable to make reparation. If a public highway be out of repair, the passengers may lawfully go through an adjoining private enclosure. It is lawful to raze houses to the ground to prevent the spreading of a conflagration. These, it is said, are cases of urgent necessity, in which no action lay at Common Law by the individual who sustained the injury. And it is true too, that the right of public domain, or inherent sovereign power, gives to the Legislature the control of private property for public uses. Roads may be cut through the lands of individuals without their consent; and timber may be taken from the adjacent lands to make the necessary causeways and repairs, without the consent of the proprietor. But to this right there is, in this State, a qualification annexed by the declaration in the Bill of Rights, that 'no person's property shall be taken or applied to public use, without adequate compensation being made, unless by the consent of such person.'"

The court's holding is thus stated: "The duty of providing highways for the use of the public has been confided to the counties. The Overseers of roads are the legally constituted agents of the counties from which they receive their appointment, and what they do in the proper and necessary exercise of the authority conferred upon them, the county, in its corporate capacity, is responsible for."

It is to be noted that the corresponding section in the Constitutions of 1845, 1861, 1866, and 1869 (article 1, § 14) did not include damage to private property, but only included taking or applying to public use. The provision is quoted in the above excerpt from Watkins v. Walker County.

Some divergence of view upon this subject as related to damage, as distinguished from taking under our present constitution (quoted above), later arose among the Courts of Civil Appeals, and the decisions in Zavalla County v. Akers (Tex. Civ.App.) 91 S.W. 245, and Siewerssen v. Harris County, 41 Tex.Civ.App. 115, 91 S.W. 333 (error refused), apparently support appellants' third point, above. The question was again examined in Harris County v. Gerhart, 115 Tex. 449, 283 S. W. 139, 140, and these decisions on this point were expressly disapproved. The court say:

"The case of Zavalla County v. Akers (Tex.Civ.App.) 91 S.W. 245 (January, 1906), was one within the original jurisdiction of the county court and over which this court had no jurisdiction. Therefore the petition for writ of error was dismissed for want of jurisdiction.

"Writ of error was denied by this court in the case of Siewerssen v. Harris County, 41 Tex.Civ.App. 115, 91 S.W. 333. While we do not approve the holding in that case relating to liability of the county for damages alleged to have been caused by so constructing and maintaining the public road as to cause overflow, yet the writ was properly denied on other issues. The jury had found that the water did not overflow the plaintiff's land in greater quantities than it would have done naturally.

"The only direct action of this court upon the issue of law involved here is found in the case of Palo Pinto County v. Gaines (Tex.Civ.App.) 168 S.W. 391, in which writ of error was refused by this Court. The facts in that case were identical with those in this case, and the one issue of law was ruled as here, the court citing Voss v. Harris County, 33 Tex.Civ.App. 249, 76 S.W. 600."

The court's holding that the county was liable was expressly rested upon the above constitutional provision; the court quoting with approval from the Bell County Case, supra.

We think it unnecessary to review the authorities further. We regard the question settled in this state, which concludes the matter so far as this court is concerned. While there is some divergence of view in other jurisdictions, we believe the holdings in this state are in accord

with the great weight of authority elsewhere in this country.

■ Nor do we think it necessary to consider whether the injury here complained of amounted to a "taking" of property within the meaning of the Constitution. Under the more recent decisions of the Federal Supreme Court, it would be held "a partial taking of the lands for which the government was bound to make just compensation under the Fifth Amendment." Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 27, 78 L.Ed. 142, 96 A.L.R. 1, and supporting authorities cited under headnote 1.

■ With reference to appellants' third and fourth points, above, it should be noted that evidence regarding crops and the value of various improvements on the land was offered only as bearing upon the value of the land before and after construction of the highway. It is not seriously contended that it was not admissible for this purpose. Appellants' chief contention in this regard is that the jury should have been specifically charged that it could only be considered for that purpose. Appellants made no request for such charge; absent which, the rule is that they cannot urge the objection after trial. Massie v. Hutchison, 110 Tex. 558, 222 S.W. 962.

■ We overrule appellants' fifth point. The deed was only to a specific tract of land for public road right of way purposes. It was not executed until 1930, long after the damage to the farm, and the cause of action for resulting damage had accrued. It did not purport to be in settlement of or compensation for such damage, but only to pass title to the county for the stated purpose. But even had it been executed prior. to construction of the road, it could not properly be held to embrace damages which might thereafter accrue · from constructing the roadway in such manner as to overflow and thereby injure appellees' lands. True, a conveyance of land for a specific purpose carries with it the right in the grantee to use it for such purpose; and the grantee could not thereafter be held in damages resulting alone from such use. But that is not the subject-matter of the suit here. No complaint is made of the use of the conveyed tract for highway purposes. The sole basis of the suit was the injury to the Hale lands caused by the *manner* in which the highway was *con-*

*structed*—a wholly different thing from mere use for right of way purposes.

■ Appellees' sixth point above: It is a rule of general application that the state is not liable for interest upon claims or judgments against it, absent an express agreement on the part of the state to pay interest. This is conceded and citation of authority is unnecessary. Where, however, as here, the allowance of interest is merely an element of damage, and such damage is awarded under the constitutional mandate of "adequate compensation," we believe it is as much provided for as the principal amount of the damage at the date of its accrual. There is, we believe, no essential difference between "adequate compensation" under our State Constitution, and "just compensation" under the Fifth Amendment to the Federal Constitution. To be adequate the compensation must be "just," and vice versa. The two expressions, when used in this connection, are synonymous. It is now the rule in the federal courts that "just compensation" in the following portion of the Fifth Amendment: "Nor shall private property be taken for public use, without just compensation," includes interest. Jacobs Case, above, from which we quote in this regard (Mr. Chief Justice Hughes writing for the entire court):

"The amount recoverable was just compensation, not inadequate compensation. The concept of just compensation is comprehensive, and includes all elements, 'and no specific command to include interest is necessary when interest or its equivalent is a part of such compensation.' The owner is not limited to the value of the property at the time of the taking; 'he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking.' Interest at a proper rate 'is a good measure by which to ascertain the amount so to be added.' Seaboard Air Line R. Co. v. United States, 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664, 669. That suit was brought by the owner under section 10 of the Lever Act (40 Stat. 279), which, in authorizing the President to requisition property for public use and to pay just compensation, said nothing as to interest. But the Court held that the right to just compensation could not be taken away by statute or be qualified by the omission of a provision for interest where such an allowance was ap-

propriate in order to make the compensation adequate. See, also, United States v. Rogers, 255 U.S. 163, 169, 41 S.Ct. 281, 65 L.Ed. 566, 568.

"The principle was restated in Phelps v. United States, 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083. There the suit was brought in the Court of Claims (61 Ct. Cl. 1044), and that court gave judgment for the value of the property as it was found to be at the time of the requisition. Plaintiffs insisted that they were entitled to an additional amount to produce the equivalent of the value of the property 'paid contemporaneously,' and that, for this purpose, interest as a reasonable measure should be allowed. This Court sustained the claim. The Court held that judgment in 1926 for the value of the use of the property in 1918 or 1919, without more, was not sufficient to constitute just compensation, that the claim was not for 'interest' within the meaning of section 177 of the Judicial Code (28 U.S.C. § 284 [28 U.S.C.A. § 284]), and that that provision did not preclude the · recovery of the additional amount asked. To the same effect are Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 123, 44 S.Ct. 471, 68 L.Ed. 934, 941; Liggett & M. Tobacco Co. v. United States, 274 U.S. 215, 47 S.Ct. 581, 71 L.Ed. 1006."

■ Appellants' seventh point we believe wholly without merit. The jury's answers to special issues 4(a) and 4(b) are clear and unambiguous. They do not admit of a substantial doubt' as to the jury's meaning, namely, that the "entire farm" (which consisted of 1,400 acres) was worth $75 per acre before, and $48 per acre after, construction of the temporary highway dump. Moreover, these answers were in accordance with the specific issues which were submitted to the jury. Each of these issues called for a finding of the value "of the Hale farm per acre" at the specific time inquired about. No objection was made to the issues in this form, and the jury's answers were so worded as to leave no doubt as to their meaning.

■ The assignment of error in appellants' motion for new trial, which forms the basis of their eighth point, above, reads: "Because the judgment is excessive and unreasonable and is contrary to the facts in this case and not supported by the evidence, especially in that the judgment shows that it is arbitrary, excessive and unreasonable, in that by the plaintiff's own sworn statement of the damages suffered to his land, plaintiff had sworn that the damage to the land was only the sum of $6,000.00 (S.F. 852), and the judgment rendered herein in so far in excess of $6,000.00, the amount which plaintiff had sworn in a claim filed with the Commissioners' Court of Leon County and attached to a petition in a suit based upon this same cause of action filed in the District Court of Leon County, Texas, such judgment is prima facie unreasonable and excessive and is wholly unsupported by the facts and the evidence in this case and the judgment should be set aside and a new trial granted."

This assignment raises the issue of excessiveness of the verdict only as a matter of law. Consequently we have no jurisdiction to consider the question factually. Hall Music Co. v. Robertson, 117 Tex. 261, 1 S.W.(2d) 857; Phillips v. Anderson (Tex.Civ.App.) 93 S.W.(2d) 171. The mere fact that in a verified pleading in a former suit against the county, plaintiff had estimated his damage at $6,000, was not conclusive upon that issue. There was abundant evidence in the record from credible witnesses other than plaintiff which supported the jury finding on the amount of the damages. The evidence was highly conflicting both as to the existence of injury vel non, and as to the extent thereof. These were pure fact issues, which it is not our province to review under the above assignment of error.

■ We believe the judgment is erroneous in providing interest from its date. As above stated, the state is not liable for interest as such, but only as an element of damage in awarding "adequate compensation" under the involved constitutional provision. The statutory requirement that judgments shall bear interest from their date has, we believe, no application to judgments against the state. The judgment awards interest, not only on the principal amount of damage from the date it accrued, but also interest on the amount of interest that had accrued at the date of judgment. This appears upon the face of the judgment, and therefore, if erroneous (as we hold), is fundamentally so.

The trial court's judgment is reformed so as to award appellees judgment for

$37,800, together with interest thereon from September 1, 1927, at the rate of 6 per cent. per annum, and all costs, both trial and appellate. As so reformed and in all other respects the judgment is affirmed.

Reformed and affirmed.