**STATE v. BREWER et ux.**

No. 3982.

Court of Civil Appeals of Texas. Beaumont.

April 10, 1942.

Rehearing Denied May 27, 1942.

Gerald C. Mann, Atty. Gen., and Richard H. Cocke, Ocie Speer, and Geo. W. Barcus, Asst. Attys. Gen., for appellant.

Collins, Williams & Garrison, of Lufkin, for appellees.

WALKER, Chief Justice.

In 1927 appellees, B. K. Brewer and wife, bought a certain tract of seventy-one acres in Angelina county, crossed by U. S. highway No. 69, fifteen acres on one side of the road and about fifty-five acres on the other side. Subsequently, appellees built a beautiful home on a hill on the larger tract, facing the highway, about two hundred yards from the highway. In 1935 appellant, the State of Texas, purchased from appellees a strip of land one hundred twenty feet wide for the purpose of improving highway No. 69; the highway was reconstructed on the roadbed of the old road. In building the new highway, appellant made a cut fourteen to sixteen feet deep directly in front of appellees' house. Appellant built a road for appellees from the new highway by their residence, leaving the main highway about three hundred feet from appellees' house, circling by the house to the road about the same distance on the other side. Appellees conveyed the strip across their land to appellant on the consideration of $180, and on the representations made to them by appellant that the cut in front of their house would be from three to four and a half feet deep;

as stated above, when completed it was fourteen to sixteen feet deep. Before the new highway was built, appellees' home was a very beautiful place to live, very desirable for a home. Before the new road was built, the old road was about on a level with appellees' house property; the people passing on the highway had a clear view of the house; appellees could sit, and did sit, on their porch and watch the traffic pass the road; the people passing along the highway could see appellees' home and yard and flowers. Before the new highway was built the mail box was near the old road in front of the house. Since the new road was built, people traveling on it can not see the house when directly in front of it. Before the new road was built appellees had a hog range across the road on the fifteen acres; after the new road was built they abandoned the old hog range and were forced to move the hogs nearer the house; it was inconvenient to feed the hogs and look after them in the old hog lot. The driveway up to the house from the new road is more inconvenient than the approach to the old road.

Appellees brought this suit against appellant, on authority of a Senate Concurrent Resolution for the damages suffered by them as the proximate result of the construction of the new highway by appellant; for cause of action they plead generally the facts as stated above. Appellant answered by general and special demurrers, and by general and special denials. On the trial, by its verdict the jury found the following facts. The reasonable cash market value of appellees' property immediately before the construction of the new highway was $5,500; immediately after the construction of the highway it was $3,300. Prior to, and at the time appellees executed and delivered their deed to appellant to the one hundred twenty foot strip across their land, they did not know that the highway was to be constructed in the manner in which it was constructed. Appellees did not consent to the construction of the highway in the manner in which same was constructed. On the verdict of the jury judgment was for appellees for $2,200, the depreciation in the value of the property, proximately resulting from the construction of the new road, with interest thereon at the rate of six per cent per annum from November 6, 1936, making the total sum due on the verdict of the jury, principal and interest, as of August 14, 1941, $2,832.50. Appellant has duly prosecuted its appeal to this court.

The first point made by appellant is that appellees' petition was subject to the general demurrer; that appellant was not liable for the destruction of the beauty of appellees' property facing the highway; that it was not liable for the damage suffered by appellees resulting from their inability to see automobiles traveling along the highway, nor for the inability of the traveling public to see appellees' home, nor for the inconvenience caused appellees resulting from the construction of the highway. It is appellant's point that appellees, by and through their deed to appellant, assented to bear all damages proximately resulting to the residue of their property from the location and construction of highway No. 69 in an ordinarily careful and skilful manner; that the damages suffered by appellees were, as a matter of law, within the contemplation of their grant to appellant by their deed, and that, as against this deed, they were estopped, as a matter of law, to claim the damages sued for. On the same argument, appellant contends that the court erred in refusing to instruct the jury to return a verdict in its favor, and in refusing to render judgment for it non obstante veredicto. These contentions are overruled. The consideration paid by appellant to appellees for the strip of land to be used for the new road did not take into consideration the damage to appellees' property from constructing the road in the manner in which it was constructed. Appellees sold their property to appellant on representations that the cut would be from three to four and a half feet deep; had the road been so constructed, appellees would not have suffered the principal part of the damages sued for. As against the representations made appellees inducing the sale, the road was constructed with a cut fourteen to sixteen feet deep, proximately causing most of the damages suffered by appellees. On the verdict of the jury, when appellees deeded the property to appellant they had no reason to apprehend that the road would be constructed in the manner in which it was constructed, resulting in the destruction of appellees' view of the road and of the passing traffic, and of the view of the passing traffic of their home. On authority of City of Houston v. Bartels, 36 Tex.Civ.App. 498, 82 S.W. 323, 324, 469, writ refused, it is our conclusion that appellees' petition was not subject to the

general demurrer, and that the elements of damage sued for by appellees were proper elements to be considered by the jury in estimating the damages proximately caused by the construction of the new highway in the manner in which it was constructed.

Appellant cites railroad cases, denying liability against railroads, on facts practically on all fours with the facts of the case at bar. The rule on railroad cases was stated as follows by the court in City of Houston v. Bartels:

"In support of the first defense appellant advances the proposition that where a landowner deeds to a city land for street purposes it is conclusively presumed that she assented to bear all loss and take all profit which might incidentally result to the residue of her property from the location and construction of the street in a proper manner; that is, an ordinarily careful and skillful construction. This is undoubtedly the rule as applied to the construction of railways over lands acquired for right of way by deed from the owners."

The clear holding of that case is that the rule regulating liability in railroad cases does not apply to the sale of property for street purposes and the improvement of the street under its title. The facts of the case at bar are, in law, on all fours with the facts of City of Houston v. Bartels; in distinguishing that case from the rule governing the railroad cases, the court said:

"But, even if it be conceded that it applies to the sale of property for street purposes, it does not follow that the doctrine should control this case. On the former appeal of this case, it was held by the Court of Civil Appeals at · San Antonio ([32 Tex.Civ.App. 389], 74 S.W. [326], 328) that the facts showed beyond dispute that the possible injury to the remainder of plaintiff's property was not taken into consideration in planning the improvement, and we think · the observation is equally true of this record. When plaintiff deeded the property to the city it does not appear that she had any reason to apprehend that the city would so plan the improvements as to sacrifice her · property· on the altar of municipal economy. She has as much interest in the street as those not connected with its dedication. A street is supposed to be constructed with reference to the welfare and convenience of those who live along it and have the right to its use. We can perceive no distinction between this case and the case which would have been presented had the city first established the street according to the natural lay of the land, and afterwards, in an effort to conform it to the grade of proposed new improvements, had cut it down to the injury of owners of property abutting on the street. In either case it would amount to the imposing on private owners of a burden which properly should be borne by the entire body corporate."

We overrule appellant's contention that the verdict was without support, because "the jury made no finding that the damage, if any, done to appellees' property was directly and proximately caused by the building of the highway." On the undisputed facts the damages suffered by appellees proximately resulted from the construction of the new highway in the manner in which it was constructed. But if we are in error in this construction of the evidence, the court, on the evidence, resolved that issue in favor of appellees; the power of the court to make this supplementary finding has clear support in Wichita, etc., R. R. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79.

Appellant's last point is that the verdict of the jury was excessive. Seven witnesses testified on the issue of damages suffered by appellees. We take the following summary from appellant's brief of the testimony of all the witnesses on this issue:

"Appellee Brewer testified that in 1935 he conveyed to the State a 120-foot strip across his land on which the highway was to be built. That in building the highway they cut the grade in front of his residence, lowering same about 16 feet; that as a result the public driving along the highway could not see his house. And that they could not drive directly from the house straight up to his residence; that the new highway to his residence was started about 300 feet and went in a curve up to his house from the new highway. That as a result of the highway being built, he had to move his mail box down in the cut; that as a result his land had decreased in value from $6000 to $7000 down to $3000 to $3500. He testified that when he gave the deed they told him the cut in front of his house would be from about 3½ to 4 feet deep. He testified that his land was worth as much now as it was before the road was built.

"S. W. Littlejohn testified that the property before the road was built was worth from $6000 to $7000, and after it was worth from $3000 to $3500. That the damages were occasioned because it was inconvenient to get to the house, and because the house could not be seen from the new highway. He testified that it was as easy to get to the house now after the highway was built as it was before. J. F. Young testified that prior to the time the highway was built the property was worth from $5000 to $6000, afterwards from $2500 to $3000. That before the highway was built the property was an attractive place. That the depreciation in the value was caused by the difference in the view from the road and the inconvenience. That it was not, however, any more inconvenient to reach the residence than prior to the time the road was built.

"Fayette Calvert testified that before the road was built the property was worth from $6000 to $7000, and afterwards was worth nothing to $4000; that the difference in the value was occasioned entirely because of the marred scenery.

"J. W. Sessions testified that before the road was built the property was worth from $5000 to $6000, and afterwards from $2500 to $3000. That the only objection or damage caused to the property was that after the highway was built a person going down the highway could not see the house. That the difference in the price was caused by the big dump.

"E. E. Penn testified that before the road was built the property was worth from $5000 to $7000, and afterwards from $2500 to $3500. That the depreciation was caused by reason of the fact that a person could not see the house from the road. He testified it was no harder to get to the house now than before the road was built. That appellee Brewer told him at the time he executed the deed that the cut in front of the house would be from 4 to 4½ feet.

"John Presnal testified that before the road was built the property was worth from $5000 to $6000; that after it was built it was worth from $2500 to $3000. That the land was the same value now as before; that for a home place it was worth less. That the damage was occasioned because the road cut off the view from the house, and that was the only reason for the depreciation in the value." The evidence supports the verdict of the jury, assessing appellees'· damages.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.

### On Rehearing.

We make the following additional statement, supplementing the statement made in the original opinion. M. C. Spivey, a witness for appellant, testified that he was an employee of the State Highway Department, and had been in its employment for twelve years; that he was in this employment in 1934, 1935 and 1936; that he had known appellee for about fifteen years; that he was familiar with the state highway in issue. He recalled that Mr. Brewer executed a deed for the right of way across his land, but did not remember the date. He testified further that he was the resident engineer on the job, improving the highway in issue; that the plans were first drawn and then changed; that in his best judgment the first plans were published in November or December, 1934; that the plans were changed after the first of the year, in February or March—it could have been the latter part of March; that he talked with Mr. Brewer when "he first got the plans"—told Mr. Brewer that the cut would be four, five or six feet deep; after that conversation the district engineer told him that the plans had been changed, and that they would have to cut a thousand· foot site distance; we reframed these plans * * * what day that was, I don't know; I can't say." Appellee testified: "Yes, that was the agreement. They were not to cut the cut but three feet"; the surveyor told him that; Mr. Spivey was one of the surveyors; Mr. Spivey came to his place in January or the first of February, 1935, and talked to him about the right of way; the "contract, when I sold them the right of way said it would not be but three and one half and not more than four. A man would have been crazy enough to give a deed if he knew they were going to cut it up like that"; that he first learned the intention of the Highway Department to cut through the land as deep as fourteen or sixteen feet after the beginning of the construction after he had executed the deed to the right of way. The following additional authorities, in our judgment, support our conclusion that the damages sued for by appellees and awarded them by the judgment of the lower court, proximately resulted from the wrongs charged by ap-

pellees against appellant. State v. Hale, Tex.Civ.App., 96 S.W.2d 135, by the Supreme Court, 136 Tex. 29, 146 S.W.2d 731; Dallas County v. Barr, Tex.Civ.App., 231 S.W. 453; City of Lufkin v. Lively, Tex. Civ.App., 26 S.W.2d 706; Craig v. City of Dallas, Tex.Civ.App., 20 S.W.2d 154; City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57.

Appellant's motion for rehearing is overruled.

COMBS, Justice (dissenting).

I am unable to concur in the judgment of affirmance in this case.

On the undisputed evidence, as I view it, there is no basis in law for fixing a liability against the State for additional compensation for damages caused the residue of appellees' property by deepening the cut. There was already a public highway at the location in question. Appellees conveyed to the State additional right of way needed for widening and improving the highway for an agreed compensation of $180 which was paid. The conveyance was absolute and unconditional. True, Mr. Brewer testified that the State engineer told him the cut in front of his property would not exceed a depth of three to four feet. And also testified that he would not have made the conveyance of the right of way for $180 if he had known the excavation would be made to the depth that it was. In other words, his testimony was to the effect that his damage was much greater than he anticipated it would be when the conveyance was made. But he did not testify that the State engineer, or anyone else representing the State, agreed, as part of the consideration, that the cut would not be made deeper than three to four · feet, or that he would be paid any additional compensation in case it should be. Neither is it contended that the representation made by the engineer was not a good faith expression of his opinion at the time. The engineer merely told Mr. Brewer that the plans for the contemplated road improvement called for a cut three to four feet deep, which was true. But later new regulations were promulgated by the State Highway Department, which required grades to be reduced in order to allow a longer view ahead by motorist crossing hills, thus reducing the dangers of accidents. And when the improvement in question was later made the cut was excavated much deeper than originally contemplated in order to make the grade conform to the new regulations.

I am unable to see how these improvements made in a proper manner, in conformity with reasonable regulations for the public safety, could give rise to any liability against the State for additional compensation. Having conveyed the right of way to the State for highway purposes, the appellees were charged with notice of the right of the State to make all needed and necessary improvements on it. As I have said, the conveyance was absolute and unconditional. There was no promise, express or implied, that the State would pay to appellees any sum in addition to that paid them at the time the conveyance was made. Hence, it seems to me, the agreed compensation of $180 must be presumed to have been in full payment for all damages which might accrue to the residue of appellees' property. It amounted to an agreed valuation of anticipated damages and payment of the "adequate compensation" therefor contemplated by the Constitution. Article 1, Section 17, Vernon's Ann.St. Or, to view it from a different angle, appellees' deed vested the State with title to the right of way, and the State had the legal right to make all necessary improvements thereon incident to the proper construction and maintenance of the highway for the public use. Such improvements, properly made, could give rise to no right or claim for damages by the appellees, since they were but natural, legally foreseeable, results incident to the use of the right of way for a highway—the very purpose for which the land was conveyed.

As I see it, the case of City of Houston v. Bartels, 36 Tex.Civ.App. 498, 82 S.W. 323, 469 (prior opinion same case, 32 Tex. Civ.App. 389, 74 S.W. 326, 328) is not controlling. That case is clearly distinguishable on the facts. In that case the Court of Civil Appeals held that the excavation in question was "neither necessary nor proper." Furthermore, the damage was not of a nature that reasonably could have been foreseen and anticipated by Mrs. Bartels when she conveyed the street right of way to the City of Houston. It was occasioned by an extension of the street and erection of a bridge incident thereto. The damage to her property arose because the city authorities were unwilling to spend the extra sum of money required to build the bridge and the ap-

proach thereto in a proper manner, and thus avoid the injury to her property. In that connection the court said (82 S.W. page 324): "When plaintiff deeded the property to the city it does not appear that she had any reason to apprehend that the city would so plan the improvements as to sacrifice her property on the altar of municipal economy."

In the present case no such situation obtains. Any person unconditionally conveying a right of way to the State for highway purposes must be presumed to know that the conveyance thereby vests in the State the right to subject the property to all necessary and proper improvements for the service of the public. Conditions surrounding motor travel on public highways are subject to constant change. The right of the State to make all needed improvements from time to time in the interest of public convenience and safety is universally recognized. And one conveying a right of way to the State for a public highway is therefore presumed to have anticipated such incidental damages as may result to the residue of his property by such use. Unfortunately, the depreciation in the value of appellees' property has been for more than the $180 for which they sold the right of way. But their position in that respect is no different from what it would have been had they conveyed the property to a private individual for a price which later proved to be inadequate. Were this not so there would be innumerable claims against the State for incidental damages to adjacent property occasioned by necessary improvements of the state highways.

It follows that I think the appellees have no cause of action against the State, as a matter of law, and that the judgment of the trial court should be reversed and rendered.