STATE OF TEXAS V. B. K. BREWER ET UX.

No. 8018.  Decided February 17, 1943.
Rehearing overruled April 7, 1943.
(169 S. W., 2d Series, 468)

*Gerald C. Mann,* Attorney General, *Richard H. Cocke* and *Geo. W. Barcus,* Assistants Attorney General, for the petitioner.

It was error for the Court of Civil Appeals to hold that the State was liable in damages for building its highway across plaintiffs' farm, on land belonging to the State, merely because of the alleged marring of the beauty of the remainder of the farm, and because plaintiffs could not see traffic passing along

said highway and the said traffic could not see plaintiffs' residence. Faires v. San Antonio & A. P. Ry. Co. 15 S. W. 588; De Rossette v. Jefferson County, 288 Ky. 407, 156 S. W. (2d) 165; Texas & N. O. Ry. Co. v. Adams, 60 S. W. (2d) 509; Lewis on Eminent Domain, Vol. 2, p. 485.

*Collins, Williams & Garrison,* of Lufkin, for respondents.

Since it was not contemplated at the time of the execution of the deed that the excavation was to be as deep as it is, such deed could not operate as consent or estoppel to the damage of plaintiffs' property. Wichita Falls & So. Ry. Co. v. Pepper, 134 Texas 360, 135 S. W. (2d) 79; Cochran v. Wool Growers Central Storage Co., 140 Texas 184, 166 S. W. (2d) 904; State v. Hale, 136 Texas 29, 146 S. W. (2d) 731.

MR. JUSTICE SHARP delivered the opinion of the Court.

B. K. Brewer and wife brought this suit against the State of Texas and the Texas State Highway Department to recover damages to their rural property, allegedly caused by the construction and widening of Highway No. 69 in Angelina County. Authority to institute the suit was granted by Senate Concurrent Resolution 4, Second Called Session 45th Legislature. The jury found that the construction of the highway caused plaintiffs' property to depreciate $2,200.00 in value, and the trial court rendered judgment against the State and the Highway Department for that amount, together with interest from the time the highway was completed in 1936. The State appealed, and the Court of Civil Appeals, by a majority opinion, affirmed the judgment of the trial court, with Associate Justice Combs dissenting. 162 S. W. (2d) 466. This Court granted a writ of error because of the importance of the question involved.

When Brewer and wife bought the 71 acres of land here involved in 1927, said tract was crossed by Highway No. 69. Fifteen acres of the property lay south of the highway, and 55 acres lay north of the highway. Subsequently the Brewers built a beautiful house on a hill on the larger tract, facing the highway, and located about 160 feet north of the highway. The elevation of the highway is lower than that of the house. On March 13, 1935, the Brewers conveyed to the State, for a consideration of $180.00 cash, a strip of land 120 feet by 1011 feet, containing 2.785 acres, including 0.675 acres then used by the old highway, by a right of way deed. The land conveyed, as shown by the deed, contained 2.785 acres, and the deed contained the following provisions:

"It is understood that the strip of land above described is not to be in excess of 120 feet in width, except as hereinafter stipulated, and contains 2.785 acres, more or less, of which the right of way of the present road occupies 0.675 acres, more or less.* * *

"And it is further agreed that the said B. K. Brewer, in consideration of the benefits set out, will remove from the property above described such fences, building and other obstructions as may be found upon said property."

Plaintiffs alleged that by lowering the grade of the highway approximately 16 feet below the level of the adjoining property, the State "changed, altered and disfigured" their property to such an extent that it "has been materially injured and damaged"; that prior to the road excavation they had used a portion of the 15 acres south of the highway for a cattle and hog pasture, for which the land was well suited, but as a result of the construction of the new highway the use of the 15 acres for pasturing purposes has been destroyed, because it was inconvenient and impracticable for plaintiffs to carry feed from the house to the pasture and to care for the stock; and that as a direct and proximate result of the construction of the highway the commercial value of their premises has been permanently destroyed and impaired, and their use, convenience, and enjoyment materially hampered and impaired; and that they have suffered damages in the amount of $3,500.00. Paragraphs 7 and 8 of plaintiffs' petition read as follows:

"The resident of these plaintiffs and the property on which it was situated was especially valuable because of its beautiful location, and had been constructed at the particular place where it was actually built because of its scenic beauty but as a result of the manner of construction of said highway adjacent to and immediately in front of their residence the beauty of the property and the improvements thereon have been greatly depreciated in value. Before the alteration of the highway plaintiffs' home was situated approximately on the same level with and near to the highway and persons traveling on and over such highway had a perfect view of plaintiffs' home and surrounding property but as a result of the material lowering of the level of the highway below the level of the adjoining property it is hardly possible for persons traveling on and over such highway to even see plaintiffs' home.

"As a result of the construction of the highway in the manner described it was necessary that plaintiffs move the driveway

leading from the highway to their house and it was necessary thereafter that such driveway turn off from the highway several hundred feet East of their residence, whereas theretofore the driveway led to the highway immediately in front of their residence. Also, it has been necessary that plaintiffs' mailbox be placed on the same level with the highway as a result of which he was compelled to locate the mailbox immediately adjacent to the improved portion of the highway and because of the lowering of the level thereof below the level of the adjoining property it is especially inconvenient to the plaintiffs to go to and from the mailbox each day."

The petition contains no other allegations of damage. When summarized, it alleges that the lowering of the grade caused the following damages to plaintiffs' property: (1) "The original character of the premises has been materially changed, altered, and disfigured"; (2) the use of the 15 acres as a pasture has been destroyed, because it is inconvenient and impracticable for plaintiffs to cross the highway to attend the stock pastured on that tract; (3) "the beauty of the property," which "was especially valuable because of its beautiful location and * * * scenic beauty" and "the improvements thereon have been greatly depreciated in value," and persons traveling on the highway can no longer see plaintiffs' house, as was possible before the cut was made; (4) the entrance to the private driveway from the highway, which formerly was directly in front of the house, had to be moved several hundred feet down the highway; and (5) it is "especially inconvenient to the plaintiffs to go to and from the mailbox," which must be placed on the same level with the paved highway. The petition does not allege that the highway was not constructed according to the engineer's plan, or in a workmanlike manner, or that the State did not have a lawful right to lower the grade as it did, or that any agent of the State informed plaintiffs at the time they executed the right of way deed that the cut would be less than 14 to 16 feet deep.

The State presented a general demurred and special exceptions to plaintiffs' petition, which were overruled by the trial court. At the close of the testimony the State filed a motion for an instructed verdict, and after the verdict was rendered filed a motion for judgment non obstante veredicto; both of which were overruled.

The jury found: (1) That the reasonable market value of the property immediately before the construction of the highway

was $5,500.00; (2) that the reasonable cash market value of the property immediately after the construction of the highway was $3,300.00; (3) that the plaintiffs, prior to and at the time of the execution of the deed on March 13, 1935, did not know that the highway was to be constructed in the manner in which same was constructed; and (4) that plaintiffs did not consent to the construction of the highway in the manner in which same was constructed.

The new highway in front of the Brewer residence was constructed upon the old roadbed. The old highway was approximately on the same level with the abutting property. In building the new road the State made a grade cut about 600 feet in length, and from 14 to 16 feet deep, directly in front of the Brewer residence. The highway in front of the house is paved with concrete, is 22 feet wide, and is situated in the center of the right of way; leaving a terrace on each side of the pavement, 49 feet in width, owned by the State. The side of each terrace which faces the pavement has been sloped and sodded with grass, to protect and beautify the embankment. A private driveway, 700 or 800 feet long, was built by the State from the new highway to plaintiffs' house, beginning at one end of the cut and going up on the terrace and in front of their house, and then coming down on the other side of the cut and intersecting the highway, thus enabling a vehicle to enter or leave the highway at either end of the driveway.

The Brewers acquired this land with the highway running through it. They executed a deed conveying to the State additional land, for a valuable consideration, for the improvement of this highway. No reservations were made in the deed, nor was there any agreement made on the part of the State that the road would not be built as it was built. It is not shown that the grade of the road was not a sound engineering proposition, or that the plans were not made and the work done with the proper care and skill. It is not shown that the property was injured any more than was necessary in carrying out the plans for the building of this highway. It clearly appears that the State acquired the land for the very purpose of constructing this highway, and it was done according to the plans finally adopted. This gave the State the legal right to use this land for the purpose for which it was acquired. The evidence clearly shows that the State was careful to protect the rights of the Brewers. An injury without wrong does not create a cause of action. In 1 Tex. Jur., p. 627, sec. 20, it is said: "To give a right of redress there must not only be an injury or loss but it must have been

occasioned by the commission of a legal wrong, that is, violation of legal right and a breach of legal duty." The burden rested on the Brewers to show that they sustained a loss by reason of the construction of this highway, and, furthermore, that such loss resulted from the violation of some legal right and the breach of some legal duty due them by the State. Mexican National Construction Co. v. Meddlegge, 75 Texas 634, 13 S. W. 257; Johnson v. King & Davidson, 64 Texas 226; Smith v. Grand High Court of Jericho of Texas, 31 S. W. (2d) 192; Davis v. Clark, 271 S. W. 190.

The conveyance of land for a public purpose will ordinarily vest in the grantee the same rights as though the land had been acquired by condemnation proceedings. Lewis on Eminent Domain (3d ed.), sec. 474; Elliott on Railroads (3d ed.), sec. 1157; Hileman v. Chicago, G. W. R. Co., 113 Iowa 591, 85 N. W. 800; St. Louis & B. E. R. Co. v. Van Hoorebeke, 191 Ill. 633, 61 N. E. 326; Roushlange v. Chicago & A. R. Co., 115 Ind. 106, 17 N. E. 198. Grantors cannot recover for any damages to the remainder of the land, the land not conveyed, which result from a proper construction, use, and operation of the highway on such property conveyed. Lewis on Eminent Domain (3d ed.), sec. 474; 51 C. J., p. 525, sec. 188; Elliott on Railroads (3d ed.), sec. 1157; Houston & E. T. R. Co. v. Adams, 58 Texas 476, 482. Lewis on Eminent Domain, supra, states the rule as follows:

"The conveyance of land for a public purpose will ordinarily vest in the grantee the same rights as though the land had been acquired by condemnation. The conveyance will be held to be a release of all damages which would be presumed to be included in the award of damages if the property had been condemned. The grantor therefore cannot recover for any damages to the remainder of his land which result from a proper construction, use and operation of works upon the property conveyed. Damages which result from improper construction, such as lack of necessary culverts, or diverting a stream of water, or negligence of any kind, may, of course, be recovered."

It is shown that the State Engineer told Mr. Brewer that the cut in front of his property would not exceed a depth of three to four feet. Mr. Brewer also testified that he would not have made the conveyance of the right of way for $180.00 if he had known that the excavation would be made to the depth that it was. But he did not testify that the engineer, or anyone else representing the State, agreed as a part of the consideration that the cut would not be deeper than three to four feet, or that he

would be paid any additional compensation in case it should be. Nor is it contended 'that such representation made by the engineer as to the depth of the cut was not made in good faith, or that such representation was untrue. But new regulations were later promulgated by the State Highway Department, which required grades to be reduced, in order to prevent the danger of accidents. Therefore, when the improvements were made later the cut was excavated deeper than originally contemplated, so that such improvements would conform to the new regulations.

We are unable to see how these improvements, made in conformity with reasonable regulations for the public safety, could create any liability against the State for additional compensation. The conveyance by the Brewers to the State gave the State the right to make all necessary improvements on the land conveyed therein. There was no promise, express or implied, that the State would pay further compensation than that paid the Brewers at the time the deed was executed. This conveyance was absolute and unconditional, and unless it is shown that the State violated some legal right it owed the Brewers in constructing the highway, then no cause of action arose against the State.

The majority opinion cites, among many others, the cases of City of Houston v. Bartels, 36 Texas Civ. App. 498, 82 S. W. 323, 469 (prior opinion same case 32 Texas Civ. App. 389, 74 S. W. 326, 328), and State v. Hale, 136 Texas 29, 146 S. W. (2d) 731. Since the foregoing two cases are the principal ones on which the majority opinion is predicated, we will review only those two. In our judgment, the two cases just cited are distinguishable from this case. In the case of City of Houston v. Bartels, Mrs. Bartels conveyed a street right of way to the City of Houston. The Court of Civil Appeals in that case held that the excavation involved was "neither necessary nor proper." It was further held that the damage was not of a nature that reasonably could have been foreseen or anticipated by Mrs. Bartels when she conveyed the right of way to the City. The damages to her property arose because the City was unwilling to expend the extra sum of money required to build the bridge and the approach thereto in a proper manner and so avoid the injury to her property. The Court of Civil Appeals summed up its conclusions in the following language:

"When plaintiff deeded the property to the city it does not appear that she had any reason to apprehend that the city would so plan the improvements as to sacrifice her property on the altar of municipal economy."

The Hale case arose over the construction of a highway in such a way as to divert or cause flood waters to destroy or damage private property for public use. It was held in that case that if the State took or damaged private property for public use, such taking was subject to the right of the owner thereof to adequate compensation, as provided for in Section 17 of Article 1 (Bill of Rights), of the Texas Constitution. After discussing the powers conferred on the Highway Department to build and operate highways, this Court said:

"This carries with it the power, if need be, that a servitude may be created on land not actually taken or occupied by the public highway, for the purpose of carrying off the water, the natural flow of which is changed or diverted by the construction of such highway. This provision of the Constitution is broad enough to empower the State to do any lawful thing necessary to build a public highway."

We have no such facts involved in this case as were involved in the two cases cited above. It may be assumed that the Brewers suffered some inconvenience from the construction of this highway, and that their view of the road and those traveling on same was somewhat lessened; yet, when all the facts and circumstances are considered, they do not constitute a cause of action that can be maintained against the State. We do not believe that the testimony involved in this case raised an issue of fact to be determined; but, as we view it, only a question of law is presented. The precise question presented to this Court for decision is whether the State is liable to the Brewers under this record for damages alleged by them on account of this highway. We do not think so.

The judgments of the Court of Civil Appeals and trial court are reversed, and judgment is rendered herein that respondents take nothing against the State of Texas.

Opinion delivered February 17, 1943.

Rehearing overruled April 7, 1943.