**Reversed and Remanded and Opinion filed November 5, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00118-CV

### KIT PROJECTS, LLC, Appellant

### V.

### PLT PARTNERSHIP, Appellee

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2013-37693**

## O P I N I O N

A buyer under a real-estate purchase agreement filed suit seeking specific performance. The seller denied any breach. Each party filed a summary-judgment motion. The trial court granted the seller's motion, denied the buyer's motion, and rendered final judgment in the seller's favor. On appeal, we conclude that the trial court erred in granting the seller's summary-judgment motion and did not err in denying the buyer's summary-judgment motion. Accordingly, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff KIT Projects, LLC ("Buyer") filed suit in the trial court against appellee/defendant PLT Partnership ("Seller"). The Buyer alleged that the parties entered into a valid agreement under which the Seller agreed to sell certain real property ("Property") to the Buyer. The Buyer alleged that the parties validly agreed to amend this agreement to extend the closing date to April 30, 2013. According to the Buyer, the Seller breached the contract by repudiating it. The Buyer alternatively sought specific performance or contract damages.

In response, the Seller asserted lack of consideration and failure of consideration for the alleged amendment to the parties' agreement. The Seller also counterclaimed for breach of contract and for a declaratory judgment that (1) the proposed amendment to the agreement did not become effective because the Buyer did not validly tender $10,000 as consideration for the amendment before the Seller revoked its offer to amend the agreement; and (2) the parties' agreement authorized the Seller to terminate the agreement and receive the earnest money upon the Buyer's failure to close by March 26, 2013, or on the rescheduled date of March 28, 2013.

The Buyer and the Seller entered into written stipulations regarding certain facts. Counsel for each of the parties signed a written agreement pursuant to Texas Rule of Civil Procedure 11 and filed it in the trial court. In the Rule 11 agreement, the parties decided, among other things, that each would file a traditional motion for summary judgment and that the motions would be limited to a specified issue. Then, the Buyer and the Seller each filed traditional motions for summary judgment. The trial court granted the Seller's summary-judgment motion, denied the Buyer's summary-judgment motion, and rendered a final judgment in which the trial court ordered, among other things, that the Buyer take nothing by its

claims. The trial court overruled the Buyer's objection that the Seller was seeking relief that went beyond the agreed issue. The Buyer now challenges those rulings in this appeal.

## II. STANDARD OF REVIEW

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

## III. ISSUES AND ANALYSIS

The Buyer asserts five appellate issues:

(1) Did the trial court err in granting the Seller's summary-judgment motion and in denying the Buyer's summary-judgment motion?

(2) Did the trial court err by "interchanging" failure of consideration and lack

3

of consideration?

(3) Did the trial court err in its contract interpretation?

(4) Did the trial court err in its failure to sustain objections lodged by the Buyer to the Seller's assertion of arguments beyond those permitted by the parties' Rule 11 agreement and by making inappropriate findings of fact?

(5) Did fact issues exist preventing summary judgment for either party?

**A. Did the trial court err in allowing the Seller to assert summary-judgment arguments not permitted by the parties' Rule 11 Agreement?**

In its fourth issue, the Buyer asserts that the trial court erred in overruling its objections that the Seller's summary-judgment arguments went beyond those permitted by the parties' Rule 11 agreement. Because the Rule 11 agreement is in writing and was signed by counsel for the parties, and filed as part of the trial court record, the trial court had a duty to enforce the agreement. *See* Tex. R. Civ. P. 11; *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007). In the Rule 11 agreement, the parties settled on terms for the submission of their dispute by cross-motions for summary judgment to the trial court. Their agreement provides in pertinent part as follows:

> This letter memorializes the agreement between [the Buyer] and [the Seller] in the above-described suit relating to the parties' mutual desire to obtain a Final Judgment from the Trial Court by filing cross-motions for summary judgment (the "Motions"). The Motions will only present a single legal issue to be determined by the Court, as a matter of law, as set forth below.

> The Motions will only concern the parties' respective claims for breach of contract. More specifically, (i) [the Buyer's] motion will concern its contention that [the Seller] breached the Commercial Contract Amendment (the "Amendment") to the Commercial Contract — Improved Property (the "Original Earnest Money Contract"); and (ii) [the Seller's] motion will concern its contention that the Amendment failed for lack of consideration such that the Original

4

Earnest Money Contract was never extended, and hence, [the Seller] breached the Original Earnest Money Contract when it failed to close on March 28, 2013.

All other claims for relief asserted by either party in their live pleadings are hereby waived and will not be included in the Motions; however, this statement does not preclude [the Seller] from asserting any of its affirmative defenses. Neither party will include in its Motion for Summary Judgment ("MSJ") a claim seeking an award of attorney's fees or any other claim for relief not provided for in this, or another, Rule 11 Agreement between the parties.

. . .

As stated in the Stipulation, which is also the sole subject of the Motions is [sic]:

> "**ISSUE TO BE DECIDED BY THE COURT:** As a matter of law, was the Amendment to the real estate earnest money contract [to extend the closing date for the sale of the property][1] a binding contract between the parties even though [the Buyer] did not pay the $10,000 extension fee to [the Seller] prior to [the Seller] sending a letter to [the Buyer] stating that "there is no existing contractual agreement" between [the Seller] and [the Buyer]?

We conclude that under the agreement's unambiguous language, the parties contracted to limit the scope of their summary-judgment motions to one issue: As a matter of law, was the amendment to the parties' agreement a binding contract between the parties even though the Buyer did not pay the $10,000 extension fee to the Seller before the Seller sent a letter to the Buyer stating that "there is no existing contractual agreement" between the Seller and the Buyer?[2] The parties

---

[1] The bracketed language "[to extend the closing date for the sale of the property]" appears in the Rule 11 agreement.

[2] In one sentence of the Rule 11 agreement, the parties state that they are waiving certain claims for relief, that these claims will not be included in the summary-judgment motions, and that this statement does not preclude the Seller from asserting any of its affirmative defenses. We

5

agreed to these terms and because they complied with Rule 11, the trial court had a duty to enforce their agreement. *See* Tex. R. Civ. P. 11; *Fortis Benefits*, 234 S.W.3d at 651; *McFadden v. Oleskey*, 440 S.W.3d 646, 652–53 (Tex. App.— Austin 2010, no pet.), *abrogated in part on other grounds by*, *Franka v. Velasquez*, 332 S.W.3d 367, 382 n.67 (Tex. 2011). To determine if the trial court erred, we must examine the substance of the Seller's motion for summary judgment.

In the Seller's motion, the Seller asserted it was entitled to dismissal with prejudice of the Buyer's claims and judgment as a matter of law on its breach-of-contract claim based on the following grounds:

(1) lack of consideration for the amendment to the parties' agreement based on the Buyer's failure to validly tender $10,000;

(2) failure of the consideration for the amendment to the parties' agreement based on the Buyer's failure to validly tender $10,000;

(3) as a matter of law, the defense of unclean hands bars the Buyer's claims;

(4) as a matter of law, the defense of waiver bars the Buyer's claims;

(5) as a matter of law, the Buyer may not obtain specific performance because the Buyer has not complied with the agreement; and

(6) as a matter of law, the defense of failure to mitigate damages bars the Buyer's claims.

The trial court overruled the Buyer's objection that the Seller was seeking relief that went beyond the sole issue that the parties agreed would be submitted.[3]

conclude that this reference to the Seller's affirmative defenses means that the Seller's waiver of certain claims does not mean that the Seller waives any of its affirmative defenses. This reference does not mean that the Seller may seek summary judgment based on its affirmative defenses, which would be beyond the scope of the single issue the parties agreed would be submitted in the summary-judgment motions.

[3] The Buyer lodged this objection in its response in opposition to the Seller's summary-judgment motion. In its summary-judgment order, the trial court stated that it considered this response, and the trial court presumptively ruled on the Buyer's objections when it granted summary

6

The trial court erred in doing so. *See* Tex. R. Civ. P. 11; *Fortis Benefits*, 234 S.W.3d at 651; *McFadden*, 440 S.W.3d at 652–53. To enforce the parties' bargain, the trial court should have considered only the Seller's first summary-judgment ground and the second ground, to the extent the Seller argued that a failure of the consideration for the amendment would mean that the amendment was never a binding amendment to the parties' agreement. The trial court should not have considered the Seller's other grounds, and therefore, we will not consider them as a potential basis for affirming the trial court's judgment. *See McFadden*, 440 S.W.3d at 652–53. The trial court erred to the extent that it granted summary judgment in favor of the Seller based on these other grounds. *See id*. We sustain the Buyer's fourth issue to the extent the Buyer asserts that the trial court erred in failing to sustain its objection that the Seller sought relief that exceeded the sole issue that the parties agreed would be submitted.

**B. Did the trial court err in impliedly concluding that there never was a binding amendment to the parties' real-estate purchase agreement based on an alleged lack of consideration?**

We next address whether the trial court erred in granting summary judgment based on its implied conclusion that the amendment to the parties' agreement was not binding due to a lack of consideration for this amendment. The Buyer and Seller stipulated in writing to the following facts:

- On January 28, 2013, the Buyer and the Seller entered into a binding written agreement for the sale of the Property by Seller to Buyer in which the parties provided that the closing of the

judgment. At the Buyer's request, the trial court disclosed its rulings on the Buyer's objections in an order signed after the court granted summary judgment and while the court still had plenary power over the judgment. The failure of the trial-court record to reflect the trial court's rulings on the Buyer's objections until after the trial court granted summary judgment does not result in a waiver of these objections. *See Hill v. Crowson*, No. 10-09-00006-CV, 2009 WL 3858065, at *1–2 (Tex. App.—Waco Nov. 18, 2009, no pet.) (mem. op.).

sale would be on or before March 26, 2013.

- On January 29, 2013, the Buyer deposited the required earnest money with the title company.

- On March 28, 2013, the Buyer did not have the purchase money for the closing that was set to occur on this date, which had been extended from March 26, 2013, as an accommodation to the Buyer by the Seller.

- On March 28, 2013, the Buyer asked the Seller for a thirty-day extension of the closing. In consideration for extending the closing date to April 30, 2013, the Buyer agreed to pay an additional $10,000 extension fee directly to the Seller. This fee was non-refundable and not applicable to the sales price.

- On March 28, 2013, the Seller received from the Buyer a $10,000 personal check for the extension fee. But, upon tender of the check, the Buyer advised the Seller that the check was not good yet as funds had not yet been deposited into the Buyer's checking account to cover the amount of the check.

- On the same date, the Seller advised the Buyer by email that the Seller would deposit the extension-fee check no later than April 3, 2013.

- On April 3, 2013, the Seller deposited the Buyer's $10,000 extension-fee check.

- The next day, the Buyer returned the signed Amendment instrument to the Seller.

- On April 5, 2013, the Buyer contacted the Seller by telephone to advise that there still were no funds in the Buyer's account to cover the $10,000 extension-fee check.

- Three days later the Seller's bank account reflected that the check had been returned for insufficient funds.

- On April 9, 2013, the Buyer advised the Seller that the Buyer was obtaining a cashier's check for the $10,000 extension fee.

- On the same date, the Buyer advised the Seller in a telephone call that the Buyer had a cashier's check in hand and was ready to deliver it to the Seller immediately, but the Buyer first wanted to know if the 30-day extension agreement was still

8

acceptable to the Seller.

- The Buyer never delivered the cashier's check, or any other means of payment, for the $10,000 extension fee to the Seller or to anyone associated with the Seller.

- Late in the afternoon of April 9, 2013, the Seller delivered a letter by email to the Buyer stating that "there is no existing contractual agreement between" the Seller and the Buyer.

Both parties signed the amendment instrument. Under its plain text, the Buyer and the Seller agreed, effective March 28, 2013, to change the closing date under their original agreement to April 30, 2013. In the amendment, the parties described the consideration for this extension as follows:

> In consideration for this 30 day extension Buyer agrees to pay an additional $10,000 extension fee directly to [the Seller]. This fee is non refundable and not applicable to the sales price.

The Buyer asserts the consideration for the amendment was the Buyer's promise to pay the $10,000 extension fee. The Seller asserts that the consideration for the amendment was either the payment of the $10,000 fee or the valid tender of the $10,000 fee. Essentially, the Seller equates a promise to pay with making payment. The Buyer asserts a promise to pay is not the same as making payment.

Though the Seller does not expressly argue that the Buyer's payment of the $10,000 fee is a condition precedent to the Seller's obligation to extend the closing date to April 30, 2013, effective March 28, 2013, parts of the Seller's argument seem to suggest that the Seller is asserting the non-occurrence of the payment was an unsatisfied condition to the extension of the closing date, so we address this issue. To determine whether a condition precedent exists, we look to the entire contract to ascertain the intention of the parties. *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 281 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The words the parties chose are the best indicators of an intent to create a condition precedent. To make performance specifically conditional, a term such as

9

"if," "provided that," "on condition that," or some similar phrase of conditional language normally must be included. *Id*. If no such language is used, the terms typically will be construed as a covenant, to prevent a forfeiture. *Id*. Though there is no *per se* requirement that such phrases be utilized, their absence is probative of the parties' intention that a promise be made, rather than a condition imposed. *Id*. In construing a contract, courts seek to avoid forfeiture and so when another reasonable reading of the contract is possible, courts will steer clear of finding a condition precedent. *Id*. When the intent of the parties is doubtful, courts will interpret the agreement as creating a covenant rather than a condition. *Id*. Because conditions tend to be harsh in operation, conditions are not favored in the law. *Id*.

The text of the amendment does not point to a condition. There is no language in which the parties state that the closing date will be extended "if," "provided that," or "on condition that," the Buyer pays the extension fee. Rather, the parties state that effective March 28, 2013, they amend their agreement to change the closing date to April 30, 2013. This phraseology typifies covenant language, not condition-precedent language. The parties state that in consideration for this extension the Buyer "agrees to pay" the extension fee. After considering the amendment instrument under the applicable legal standard, we conclude that, under the unambiguous language of that instrument, payment of the $10,000 is not a condition precedent to the extension of the closing date to April 30, 2013. *See id*. at 281–82.

For the amendment to the parties' agreement to have been valid and binding on the parties, the amendment must have been supported by consideration. *See Hovas v. O'Brien*, 654 S.W.2d 801, 803 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Consideration may consist of a benefit to one party or of a detriment to the other party. *See id*.

10

In interpreting the amendment instrument, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the document. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). To ascertain the parties' true intentions, we examine the entire instrument in an effort to harmonize and give effect to all its provisions so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). When a written instrument is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

We conclude that under the clear wording of the amendment instrument, the consideration for the extension of the closing date was the Buyer's agreement to pay the $10,000 extension fee rather than the Buyer's payment of the extension fee or the Buyer's valid tender of the fee. *See Helmerich & Payne Intern. Drilling Co. v. Swift Energy Co.,* 180 S.W.3d 635, 646–47 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Covenants are a common type of consideration, and under the text's plain meaning, the consideration for the Seller's agreement to extend the closing date was the Buyer's agreement to pay the $10,000 extension fee. In negotiating for the extension, the parties could have contracted for the consideration to be the Buyer's payment of the extension fee or the Buyer's valid tender of the fee, but the parties did not do so. We must enforce the parties' agreement as written. It is not this court's role to question the wisdom of the parties' agreement or to rewrite the relevant provisions of the instrument under the guise of interpretation. *See id. at* 646. Instead, we look to the unambiguous language of the extension instrument and hold that the Buyer promised to pay the $10,000 extension fee and that promise was the consideration for the extension of the closing date to April 30,

11

2013, effective as of March 28, 2013.[4] *See id.* Therefore, the amendment was supported by consideration. *See Hovas*, 654 S.W.2d at 803. And, the summary-judgment evidence proved it.

The summary-judgment evidence conclusively shows the amendment is supported by consideration and that by April 4, 2013, when the Buyer returned the signed amendment instrument to the Seller, the amendment was valid and binding on the parties, even though the Buyer did not pay the $10,000 extension fee to the Seller or validly tender payment of the fee before the Seller sent a letter to the Buyer stating that "there is no existing contractual agreement" between the Seller and the Buyer. *See id.* Therefore, the trial court erred to the extent it granted summary judgment in the Seller's favor based on the conclusion that the summary-judgment evidence proved as a matter of law that the amendment never was binding on the parties due to a lack of consideration. *See id.*

## C. Would a failure of consideration mean that there never was a binding amendment to the parties' agreement?

In the trial court and on appeal, the Seller has contended that there never was a binding amendment to the parties' agreement due to an alleged failure of consideration—the Buyer's failure to pay the $10,000 extension fee. This argument raises a legal issue regarding the effect of an alleged failure of consideration. Though courts have described the "failure of consideration"

---

[4] The Seller argues on appeal that the Buyer's conduct in giving a check for $10,000 to the Seller on March 28, 2013, undermines the Buyer's argument that the consideration was the Buyer's promise to pay $10,000 rather than the actual payment of $10,000. But, the Buyer gave the Seller a check for $10,000, advised that there were insufficient funds in the checking account to cover the amount of the check, and advised that the Buyer would deposit sufficient funds in the account to cover the check by April 3, 2013. This conduct does not speak to the parties' agreement regarding the consideration for the extension. Indeed, the unambiguous language of the amendment instrument, which the Seller signed on March 28, 2013, provides that the consideration was the Buyer's promise to pay the $10,000 extension fee.

affirmative defense in various ways, courts agree that this defense is distinct from "lack of consideration." A "failure of consideration" does not mean that there never was any binding amendment. *See Cheung-Loon, LLC v. Cergon, Inc.*, 392 S.W.3d 738, 747–48 (Tex. App.—Dallas 2012, no pet); *Burges v. Mosley*, 304 S.W.3d 623, 628–29 (Tex. App.—Tyler 2010, no pet.); *Walden v. Affiliated Computer Servs.*, 97 S.W.3d 303, 320–21 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Instead, the failure-of-consideration defense comes into play when a party does not receive the promised performance under a binding contract. *See Cheung-Loon, LLC*, 392 S.W.3d at 747–48; *Burges*, 304 S.W.3d at 628–29; *Walden*, 97 S.W.3d at 320–21. Therefore, to the extent that the trial court granted summary judgment based on a conclusion that the amendment was never binding on the parties due to a failure of consideration, the trial court erred.[5] *See Cheung-Loon, LLC*, 392 S.W.3d at 747–48; *Burges*, 304 S.W.3d at 628–29; *Walden*, 97 S.W.3d at 320–21. Having concluded that none of the Seller's summary-judgment grounds were a proper basis for the trial court to grant summary judgment, we conclude that the trial court erred in granting the Seller's summary-judgment motion, and we sustain the Buyer's first issue to this extent.[6]

## D. Did the trial court err in denying the Buyer's summary-judgment motion?

The Buyer sought a summary judgment granting specific performance of the

---

[5] To the extent the trial court concluded that the amendment was binding on the parties but granted summary judgment based on a failure of consideration, the trial court erred because this ground was outside of the scope of the issue to which the parties agreed that the summary-judgment motions would be limited, as discussed in section III. A., above. *See McFadden*, 440 S.W.3d at 652–53. Because it does not affect whether the amendment was a binding contract between the parties, we do not address in this opinion the merits of the Seller's failure-of-consideration defense.

[6] Having sustained this part of the first issue, we need not and do not address the Buyer's second or third issues.

13

parties' agreement. On appeal, the Buyer asserts that the trial court erred in denying this motion. Though the Buyer did not seek a final judgment in this motion, this court may review the trial court's denial of the Buyer's motion because the Buyer and the Seller each sought summary judgment on the same issues. *See Frontier Logistics, L.P. v. National Property Holdings, L.P.,* 417 S.W.3d 656, 664 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

To the extent the Buyer asserted in its motion that, as a matter of law, the amendment to the parties' agreement was a binding contract between the parties even though the Buyer did not pay the $10,000 extension fee to the Seller before the Seller sent a letter to the Buyer stating that "there is no existing contractual agreement" between the Seller and the Buyer, this proposition does not, by itself, entitle the Buyer to a judgment granting the Buyer specific performance of the parties' agreement. *See, e.g., DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2005) (stating that "[a]n essential element in obtaining the equitable remedy of specific performance is that the party seeking such relief must plead and prove he was ready, willing, and able to timely perform his obligations under the contract"). To the extent the Buyer's motion went beyond this issue and addressed other legal issues, such as whether the Buyer was ready, willing, and able to timely perform its obligations under the parties' agreement, the Buyer's motion went beyond the scope of the parties' Rule 11 agreement. Therefore, the trial court did not err in denying the Buyer's summary-judgment motion, and we overrule the remainder of the Buyer's first issue.[7] *See id*.

## IV. CONCLUSION

The parties unambiguously agreed to limit the scope of their summary-judgment motions to one issue. To the extent the trial court granted summary

---

[7] Based on our disposition, we need not address the Buyer's fifth issue.

judgment in the Seller's favor based on other issues, the trial court failed to enforce the parties' Rule 11 agreement and thus erred. To the extent the trial court granted summary judgment by ruling in the Seller's favor on the one issue, the trial court erred because (1) the summary-judgment evidence did not prove as a matter of law that the amendment never was binding on the parties due to a lack of consideration, and (2) any failure of consideration would not mean that there never was any binding agreement. The trial court did not err in denying the Buyer's summary-judgment motion. Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.[8]

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally.

---

[8] In its fourth issue, the Buyer also asserts that the trial court erred in making inappropriate findings of fact in its summary judgment. Because we are reversing the trial court's summary judgment in its entirety, any findings in that judgment are reversed and no longer effective. We need not and do not address the remainder of the fourth issue.