**LENOX BARBEQUE AND CATERING, INC.,**
Appellant

v.

**METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY,** Appellee

NO. 14–14–00383–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed February 23, 2016

Michael Sydow, Sr., Houston, TX, for Appellant.

Frederick D. Junkin, Houston, TX, for Appellee.

Panel consists of Chief Justice Frost and Justices Boyce and McCally.

## OPINION

Kem Thompson Frost, Chief Justice

A landowner appeals the trial court's summary judgment dismissing its inverse-condemnation claim against a transit authority on the ground that the claim failed as a matter of law based on the landowner's settlement of a prior condemnation action and conveyance of the land that was the subject of that action. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee/defendant Metropolitan Transit Authority of Harris County ("Metro") needed to acquire a 0.0475–acre parcel of land (the "Property") out of a 0.454–acre tract owned by appellant/plaintiff Lenox Barbeque and Catering, Inc. for use in the construction of Metro's East End Corridor light-rail line along Harrisburg Boulevard ("East End Line"). Metro offered to buy the Property from Lenox. Lenox did not accept Metro's offers. Metro then filed a condemnation petition, seeking to condemn the Property. Eight months later, Lenox and Metro agreed to a settlement.

*Settlement of the Condemnation Action*

Under the settlement, the parties agreed, among other things, that Lenox would convey the Property to Metro by deed, and Lenox would receive $570,000 in just compensation ("Settlement Agreement"). Lenox received the agreed compensation and conveyed the Property to Metro. Based on this settlement and at Metro's request, the county court at law dismissed the condemnation petition before the commissioners held any hearing.

*Inverse–Condemnation Action for Lost–Profits Compensation*

More than two years after dismissal of the condemnation action, Lenox filed this suit against Metro asserting a single claim for inverse condemnation in which Lenox seeks compensation for an alleged taking under article I, section 17 of the Texas Constitution. In its live petition, Lenox asserts that Metro condemned the Property and as a result of this condemnation, Lenox has suffered lost profits. Lenox alleges that these lost profits are "property" within the meaning of the Texas Constitution, have value independent of the value of the Property, and are separately compensable under Texas law. Lenox alleges that Metro's compensation of Lenox for the Property does not extinguish Lenox's right to compensation for the lost profits from its business. According to Lenox, the parties did not join issue regarding lost-profits compensation in the prior condemnation action, and Metro obtained no judgment in that proceeding. Lenox claims that it never released its claim for lost profits and that its inverse-condemnation claim is not barred by release or res judicata.

*Summary Judgment in Metro's Favor*

Metro filed a motion for traditional summary judgment, asserting a number of grounds, including that Lenox's claim failed as a matter of law based on the parties' settlement of the condemnation action and Lenox's conveyance of the Property to Metro in exchange for agreed compensation of $570,000, payment of an additional $30,255.87 as reimbursement for partial-demolition costs, and other covenants contained in the Settlement Agreement. Metro asserted that the alleged lost profits Lenox sought to recover in its inverse-condemnation claim were foreseeable when Metro and Lenox settled the condemnation action. The trial court granted Metro's summary-judgment motion and ordered that Lenox take nothing. Lenox now challenges that ruling on appeal.

## II.  STANDARD OF REVIEW

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 755 (Tex.2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must

affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

### III. ISSUES AND ANALYSIS

**Did the trial court err in granting summary judgment based on the Settlement Agreement and the conveyance of the Property to Metro in exchange for agreed consideration?**

In five appellate issues, Lenox challenges the trial court's traditional summary judgment in favor of Metro. Lenox filed a response and submitted the following summary-judgment evidence: (1) an affidavit of Lenox's President, Erik Mrok, (2) a copy of Metro's petition in the condemnation action, and (3) a copy of the "Order of Dismissal Pursuant to Settlement," in which the court dismissed the condemnation petition. In his affidavit,[1] Mrok testified as follows:

- Before 2008, Lenox owned and operated a restaurant at the corner of Harrisburg Boulevard and Altic Street, where it had been located for almost 50 years.
- Lenox Barbeque was a Houston landmark. The restaurant was extremely successful and profitable.

- In 2008, Metro decided to condemn part of the property on which the restaurant was located.
- Although Mrok is aware that Metro filed a condemnation action, Lenox was never served and never appeared in any condemnation action.
- Instead, Metro negotiated a price for the land based solely upon the real estate. Metro refused to negotiate or pay any compensation for the loss of the restaurant's profits.
- After Metro took part of the land, the portion of the site that remained could not be used as a restaurant because it was far too small, and because the building set-back requirements for new construction made it impossible to re-build a restaurant at that location.[2]
- Lenox attempted unsuccessfully to relocate its restaurant business.

Mrok's affidavit also contains several conclusory statements, but conclusory statements cannot raise a genuine fact issue that would preclude summary judgment.[3] *See Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex.2013) (holding that conclusory statements cannot create a fact issue to defeat summary judgment); *B.Z.B., Inc. v. Clark*, No. 14–11–00056–CV, 2012 WL 353783, at *2–3 (Tex.App.—Houston [14th Dist.] Feb. 2, 2012, no pet.) (holding that conclusory

---

1. The trial court granted Lenox leave to amend the affidavit of Mrok that was attached to Lenox's summary-judgment response. This description is based on Mrok's amended affidavit.

2. In his deposition, Mrok testified that, even after the reconfiguration of the building, Lenox continued to offer take-out, catering, and delivery services. We conclude that Mrok's statement that it was impossible to re-build a restaurant at that location refers to the Lenox's inability to offer dine-in service after the reconfiguration of the building, as opposed to take-out, catering, and delivery services.

3. Mrok's affidavit contains the following conclusory statements:

"Because of Metro's position Lenox never agreed to settle its claims against Metro except for the sale of the [Property] alone."
"Lenox never signed a settlement agreement and never agreed to settle or release any of its claims for lost profits."
"As a result of Metro's condemnation of [the Property] Lenox has lost profits from the restaurant business for which it has never been compensated, which it has not settled, and which it has not released."

statement in affidavit did not raise a genuine fact issue) (mem.op.).

*Uncontroverted Facts Established by the Summary–Judgment Evidence*

Lenox owns the property located at 5420 Harrisburg Boulevard in Houston, Texas. Before June 29, 2009, that property consisted of a 0.454–acre tract of land and improvements. The building on the property housed a barbeque restaurant that offered dine-in, take-out, catering, and delivery services.

In July 2006, Metro announced its plan to construct the East End Line along Harrisburg Boulevard. To effect the plan, Metro had to widen Harrisburg Boulevard, which required Metro to acquire property from many landowners along Harrisburg Boulevard, including Lenox. In December 2006, Metro representatives met with Erik Mrok and his wife, the owners of Lenox, to discuss the East End Line and the anticipated need to acquire part of Lenox's property for that project. During the meeting, Lenox's owners expressed concerns about business disruptions that might result from the project, including the need to reconfigure the building, the potential need to lay off staff, and the potential for lost revenue during construction.

Metro later sent two written offers under which Metro would purchase the Property. During the negotiations between Lenox and Metro as to a possible agreement to avoid the filing of a condemnation petition, Lenox asked Metro whether Metro would compensate Lenox for workers' unemployment claims filed against Lenox when the restaurant was forced to close. Metro answered "no." Lenox did not accept Metro's offers to purchase the Property. In October 2008, Metro filed a petition seeking to condemn the Property. The following June, Metro and Lenox set-tled the condemnation action by entering into the Settlement Agreement, which contemplated the demolition and reconstruction of a portion of the building. The Settlement Agreement was in the form of a letter signed by an attorney representing Metro and an attorney representing Lenox. Under the Settlement Agreement, Metro and Lenox agreed that:

- Metro would pay Lenox $570,000 as just compensation for the Property.
- Lenox would determine where the building should be cut during the demolition of the portion of the building extending into the Property.
- Lenox would cause the portion of the building extending into the Property to be demolished and cleared so that Metro would have full, unimpeded access to the Property.
- Lenox would be responsible for securing the necessary permits and approvals from the City of Houston for the partial demolition of the building, the "sealing" of the remaining building, and for payment of any architectural, engineering, consulting, and permitting expenses associated therewith.
- Within ten business days of receiving a copy of the invoice for the demolition work, Metro would reimburse Lenox for these demolition costs in an amount not to exceed $30,255.87.
- Metro would pay Lenox relocation benefits associated with the relocation of the personal property in the portion of the building to be demolished, but Metro would not be responsible for relocation of personal property that was to remain in its present location in the building after completion of the partial demolition.
- Each party would bear its own attorney's fees, expenses, and costs of court.

Pursuant to the Settlement Agreement, Metro paid Lenox $570,000 in just compensation for the Property and $30,255.87 as reimbursement for the demolition costs. In connection with the closing of the settlement of the condemnation action on June 29, 2009, Lenox executed a warranty deed in which Lenox conveyed to Metro title to the Property.

Lenox later arranged for the demolition of the portion of the building that extended into the Property. Lenox stopped all business operations from June 29, 2009 through December 31, 2009, during the partial demolition and remodeling of the building. Since Metro's purchase of the Property, Lenox owns a 0.4065–acre tract of land that is still improved with a building. But, the reconfigured building cannot accommodate dine-in service. Therefore, since re-opening in early 2010, Lenox has offered only take-out, catering, and delivery services.

### Treating the Conveyance of the Property as a Release

■ The conveyance of land for a public purpose ordinarily vests in the grantee the same rights as if the grantee had acquired the land by condemnation. *See State v. Brewer,* 141 Tex. 1, 169 S.W.2d 468, 471 (1943). The conveyance will be held to be a release of all damages that would be presumed to be included in the award of damages if the property had been condemned. *Id.* Metro acquired the Property when Lenox conveyed the Property to Metro by a warranty deed executed pursuant to the Settlement Agreement. Although Metro did not acquire the Property by condemnation, under binding prec-

edent, Metro has the same rights as it would have if Metro had acquired the Property through a condemnation proceeding. *See id.* Therefore, we must treat the conveyance of the Property as a release of all damages that would be presumed to be included in the award of damages if the Property had been acquired by condemnation. *See id.*

### Scope of the Release by Conveyance

■ In a proceeding for the condemnation of a part of a tract of land for street or road purposes, it is presumed that the amount of damages allowed covers all lawful elements of damages, whether direct or consequential, that reasonably could have been foreseen and determined at the time of condemnation. *City of La Grange v. Pieratt,* 175 S.W.3d 243, 246 (Tex.1943). If a part of a tract of land is condemned for street or road purposes, the owner cannot recover in a later proceeding for consequential damages to the remainder of the land if the owner reasonably ought to have foreseen and presented those damages in the condemnation proceeding. *Id.* Therefore, we treat the conveyance of the Property as a release of all damages, whether direct or consequential, that reasonably could have been foreseen and determined at the time of conveyance (June 2009). *See id.*; *Brewer,* 169 S.W.2d at 471.

Though Lenox did not raise a genuine fact issue as to whether it has suffered lost profits, we presume for the sake of argument that Lenox has suffered lost profits. We also presume that these lost profits otherwise would be recoverable in a condemnation proceeding.[4] Under the appli-

---

4. The Supreme Court of Texas has stated that income from a business operated on the property may be considered in a condemnation proceeding only in two situations: (1) when the taking, damaging, or destruction of property causes a material and substantial inter-

ference with access to the property; and (2) when only a part of the land has been taken, so that lost profits may demonstrate the effect on the market value of the remaining land and improvements. *State v. Central Expressway Sign Assocs.,* 302 S.W.3d 866, 871 (Tex.

cable standard of review, we conclude that the summary-judgment evidence proves as a matter of law that the alleged lost profits that Lenox seeks to recover in its inverse-condemnation claim are damages that reasonably could have been foreseen and determined in June 2009, when Lenox conveyed the Property to Metro. *See Pieratt,* 175 S.W.3d at 246; *Brewer,* 169 S.W.2d at 471. Therefore, binding precedent compels this court to treat the conveyance of the Property as a release of the damages that Lenox seeks in its inverse-condemnation claim. *See Pieratt,* 175 S.W.3d at 246; *Brewer,* 169 S.W.2d at 471.

### *Alleged Lack of Clarity in Summary-Judgment Grounds*

■ Lenox asserts that in Metro's summary-judgment motion, Metro failed to clearly identify the grounds upon which Metro sought summary judgment. Lenox waived this argument by failing to assert a special exception on this point in the trial court and obtain a ruling on it. *See Cohen v. Landry's, Inc.,* 442 S.W.3d 818, 822–23 (Tex.App.—Houston [14th Dist.] 2014, pet. denied).

### *Applicability of Res Judicata*

Lenox asserts that the doctrine of res judicata cannot apply to bar its inverse-condemnation claim because Metro's condemnation petition was dismissed before Lenox was served with process and because there was no final judgment in the condemnation action. But, the trial court did not grant summary judgment on any res judicata ground, so this argument does not show any reversible error by the trial court in granting summary judgment.

### *Lack of Express Release Irrelevant*

Lenox asserts that Metro presented no summary-judgment evidence of a release by Lenox. Though the summary-judgment evidence does not prove any express release by Lenox of any claim against Metro, the summary-judgment evidence does prove as a matter of law that the alleged lost profits Lenox seeks to recover in its inverse-condemnation suit are damages that reasonably could have been foreseen and determined at the time of conveyance. Therefore, under applicable law, we must treat the conveyance of the Property as a release of the damages that Lenox seeks in its inverse-condemnation suit, even though there was no express release. *See Pieratt,* 175 S.W.3d at 246; *Brewer,* 169 S.W.2d at 471.

### *Metro's Proof of the Settlement Agreement*

■ Lenox asserts that Metro presented no evidence of a settlement agreement. We disagree. Metro attached to its summary-judgment motion the affidavit of Gabriel Matos, which contains a copy of the Settlement Agreement. Lenox asserts Mrok stated in his affidavit that there was no settlement agreement and that Lenox never executed a settlement agreement, but the part of Mrok's affidavit upon which Lenox relies is conclusory. *See Elizondo,* 415 S.W.3d at 264; *B.Z.B., Inc.,* 2012 WL 353783, at *2–3. A conclusory statement is no evidence. *See Elizondo,* 415 S.W.3d at 264; *B.Z.B., Inc.,* 2012 WL 353783, at *2–3. To the extent Lenox argues that it did not execute the Settle-

---

2009). Absent one of these two scenarios, income from a business operated on the property is not recoverable and should not be included in a condemnation award. *Id.* In its opening brief on appeal, Lenox asserts that it is not seeking to recover lost profits in this

inverse-condemnation proceeding as damages to its remaining property after the June 2009 conveyance. In any event, we presume, without deciding, that Lenox's alleged lost profits otherwise would be recoverable in a condemnation proceeding.

ment Agreement because Lenox's lawyer signed it as opposed to an officer or employee of Lenox, Lenox has not presented any argument showing that the signature of Lenox's lawyer was insufficient to bind Lenox to the Settlement Agreement. The summary-judgment evidence contains deposition testimony by Mrok that, as best he can remember, he authorized this lawyer to settle. We conclude that the summary-judgment evidence proves the terms of the written settlement agreement as a matter of law.

### Lack of Intent to Compensate for Lost Profits Irrelevant

Lenox argues that the warranty deed by which it conveyed title to the Property to Metro does not specify how the parties calculated the compensation paid to Metro and that Mrok's affidavit testimony showed that Metro did not calculate the compensation it paid to Lenox based on any of Lenox's lost profits. Presuming for the sake of argument that Mrok's affidavit shows that the compensation paid to Lenox was not based upon Lenox's lost profits or intended to compensate Lenox for its lost profits, that would not raise a fact issue precluding summary judgment under the ground discussed above. The issue is not whether the compensation paid to Metro was based on lost profits or intended to account for lost profits. *See Pieratt,* 175 S.W.3d at 246; *Brewer,* 169 S.W.2d at 471. Rather, the issue is whether the alleged lost profits that Lenox seeks to recover in its inverse-condemnation suit are damages that reasonably could have been foreseen and determined at the time of conveyance, and the summary-judgment evidence proves as a matter of law that they were. *See Pieratt,* 175 S.W.3d at 246; *Brewer,* 169 S.W.2d at 471.

Lenox relies upon this court's decision in *State v. Whataburger, Inc. See* 60 S.W.3d 256, 259–63 (Tex.App.—Houston [14th Dist.] 2001, pet. denied). In the *Whataburger* case, this court concluded under the facts presented that (1) the trial court did not err in awarding Whataburger compensation for impairment of access; (2) the evidence was legally and factually sufficient to support the court's finding of an impairment of access; and (3) the trial court did not abuse its discretion in admitting evidence of lost profits. *See id.* The *Whataburger* case did not involve an inverse-condemnation claim for lost profits after the landowner already had received compensation regarding the property in question in a prior condemnation action or by receiving compensation for the execution of a deed. *See id.* The *Whataburger* case is not on point. *See id.*

Lenox also asserts that *City of Carrollton v. Singer* is directly on point. *See* 232 S.W.3d 790 (Tex.App.—Fort Worth 2007, pet. denied). But, in *Singer,* the landowners sued the City of Carrollton alleging that it failed to comply with the agreement between the city and the landowners. *See id.* at 793–94. Even under a liberal construction of Lenox's live petition, Lenox did not assert any claim that Metro failed to comply with the Settlement Agreement or any other alleged agreement between Metro and Lenox. *See Moneyhon v. Moneyhon,* 278 S.W.3d 874, 878–79 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The *Singer* case is not on point. *See Singer,* 232 S.W.3d at 793–800.

Lenox asserts that it reserved the right to make a future claim against Metro for lost profits. Under the unambiguous language of the Settlement Agreement and the warranty deed, these instruments contain no such reservation of right, nor does the summary-judgment evidence raise a genuine fact issue as to whether Lenox reserved a right to sue Metro for lost profits notwithstanding the Settlement

537

Agreement and warranty deed. *See Elizondo,* 415 S.W.3d at 264; *KIT Projects, LLC v. PLT P'ship,* 479 S.W.3d 519, 526–27 (Tex.App.—Houston [14th Dist.] 2015, no pet.); *B.Z.B., Inc.,* 2012 WL 353783, at *2–3.

### No Fact Issues

Lenox asserts that fact issues remain as to the terms under which Lenox conveyed the Property to Metro. We conclude that the Settlement Agreement and warranty deed are unambiguous, and that the summary-judgment evidence does not raise a genuine fact issue as to the terms under which Lenox conveyed the Property to Metro. *See Elizondo,* 415 S.W.3d at 264; *KIT Projects, LLC,* 479 S.W.3d at 526–27; *B.Z.B., Inc.,* 2012 WL 353783, at *2–3. The summary-judgment evidence proves that Lenox's inverse-condemnation claim fails as a matter of law based on the Settlement Agreement and Lenox's conveyance of the Property to Metro in exchange for agreed compensation of $570,000, payment of an additional $30,255.87 as reimbursement for partial-demolition costs, and other covenants contained in the Settlement Agreement. *See Pieratt,* 175 S.W.3d at 246; *Brewer,* 169 S.W.2d at 471.

### IV. CONCLUSION

The summary-judgment evidence proves as a matter of law that the alleged lost profits that Lenox seeks to recover in its inverse-condemnation suit are damages that reasonably could have been foreseen and determined at the time of Lenox's conveyance of the Property. Under binding precedent, we must treat that conveyance as a release of the damages that Lenox seeks in its inverse-condemnation claim. The trial court did not err in granting summary judgment in favor of Metro.

Accordingly, we overrule Lenox's five issues and affirm the trial court's judgment.