**Reversed and Remanded and Opinion filed October 12, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00580-CV

---

## C-HCA, INC D/B/A CLEAR LAKE REGIONAL MEDICAL CENTER, Appellant

### V.

## REBEKAH CORNETT AND KALUM CORNETT, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DELANEY CORNETT, Appellees

---

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2018-52912**

---

## O P I N I O N

This interlocutory appeal arises out of wrongful death and survival claims brought by the parents of a child who died less than one month after her birth. The parents sued the medical center where their child was born alleging negligence by the medical center's nurses. The parents also sued two doctors alleging medical negligence. We consider whether as to the medical center, the amended expert report filed by the parents meets the statutory requirements under section 74.351 of

the Civil Practice and Remedies Code. Concluding that the expert report fails to satisfy these statutory requirements as to breach of the standard of care, we reverse the part of the trial court's order in which the court denies the medical center's motion to dismiss, and we remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2016, Delaney Cornett and her twin sister were born prematurely at Clear Lake Regional Medical Center. The twins were placed in the Neonatal Intensive Care Unit. In their live pleading, appellees Rebekah Cornett and Kalum Cornett, Individually and as Personal Representative of the Estate of Delaney Cornett (collectively the "Cornett Parties") allege the following:

- It is believed that Delaney Cornett may have had a pseudomonas infection as early as October 16, 2016.

- On October 16, 2016, Delaney Cornett was placed on a breathing machine instead of being placed on antibiotics.

- On October 22, 2016 a culture was taken from Delaney Cornett, and she was started on general antibiotics.

- The culture later revealed that Delaney Cornett had a pseudomonas infection.

- On October 23, 2016, Delaney Cornett passed away; the cause of death was septic shock.

The Cornett Parties filed suit, eventually asserting wrongful death and survival claims against appellant C-HCA d/b/a Clear Lake Regional Medical Center (the "Hospital"), and Dr. Harvinder S. Bedi, Dr. Sandip K. Patel, and Neonatal Consultants, LLP (the "Doctor Defendants"). The Cornett Parties allege that the Hospital was negligent in (1) failing to provide care to Delaney Cornett in accordance with the acceptable standard of nursing care; (2) failing to properly monitor and evaluate the patient, (3) failing to follow established protocols to prevent the spread of infection, and (4) failing to follow appropriate nursing

procedures and protocols. The Cornett Parties assert that at all times relevant to their claims, the nurses caring for Delaney Cornett were employed by, and were agents, servants, or employees of the Hospital.

In an attempt to meet the expert-report requirement under section 74.351 of the Civil Practice and Remedies Code, the Cornett Parties served the Hospital with a report authored by Dr. Dale Bull. The Hospital timely objected to the sufficiency of that report, and filed a motion to dismiss. The trial court denied the Hospital's motion to dismiss and granted the Cornett Parties' motion for a thirty-day extension to file an amended report. The Cornett Parties served an amended report from Dr. Bull. The Hospital objected to the amended report and filed a motion to dismiss, seeking dismissal with prejudice of the claims against it, as well as an award of reasonable attorney's fees and court costs under section 74.351(b) of the Civil Practice and Remedies Code. The Cornett Parties filed a motion asking the trial court to deem Dr. Bull's amended report sufficient. The trial court signed an order granting the Cornett Parties' motion and denying the Hospital's motion to dismiss. The Hospital timely perfected this interlocutory appeal.

## II. STANDARD OF REVIEW

We review a trial court's decision as to the adequacy of an expert report for an abuse of discretion. *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015). The trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Although this court may not substitute its judgment for that of the trial court, the trial court has no discretion in determining what the law is or applying the law to the facts. *Id.*

## III. ISSUES AND ANALYSIS

In a single appellate issue, the Hospital asserts that the trial court abused its

3

discretion in denying the Hospital's motion to dismiss and concluding that Dr. Bull's amended report satisfies the expert report requirements of Civil Practice and Remedies Code section 74.351. The Hospital argues that Dr. Bull's amended report is insufficient as to breach of the standard of care and as to causation.

Under the version of section 74.351 applicable to today's case, a claimant in a health care liability claim, not later than the 120th day after the date each defendant's original answer is filed, must serve on that party or that party's attorney one or more expert witness reports addressing liability and causation. *See* Act of May 24, 2013, 83rd Leg., R.S., ch. 870, §§ 2, 3(b), 4, 2013 Tex. Sess. Law Serv. Ch. 870 (current version codified at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)); Act of June 2, 2003, 78th Leg., R.S., ch. 204, arts. 10, 23, 2003 Tex. Sess. Law Serv. Ch. 204 (current version codified at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(j)). The statute defines an "expert report" as

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (West, Westlaw through 2021 R.S.). A trial court shall grant a motion challenging the adequacy of the expert report if the report is not an objective good-faith effort to comply with the definition of an expert report provided in section 74.351(r)(6). *Id.* §§ 74.351(*l*), (r)(6). The law limits the trial court's inquiry to the four corners of the report. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010).

For an expert report to be an objective good-faith effort to comply with the definition of an expert report provided in section 74.351(r)(6), the report must contain sufficient information within the document's four corners to (1) inform the defendant of the specific conduct called into question and (2) provide a basis for

the trial court to conclude the claims have merit. *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018). Omission of any of the statutory elements prevents the report from being a good-faith effort. *Jelinek*, 328 S.W.3d at 539. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *Id.* In providing the expert's opinions on these elements, the claimant need not marshal evidence as if actually litigating the merits at trial or present sufficient evidence to avoid summary judgment. *See id.* The purpose of the expert report requirement is to weed out frivolous health care liability claims in the early stages of litigation, not to dispose of potentially meritorious claims. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012).

**Did the trial court abuse its discretion in concluding that the expert's opinion as to breach of the standard of care amounted to an objective good-faith effort to comply with section 74.351(r)(6)'s definition of an expert report?**

In part of the Hospital's sole appellate issue, the Hospital complains that Dr. Bull's amended report fails to state how the Hospital breached any applicable standard of care. Dr. Bull's amended report provides in pertinent part as follows:

Treatment History:

Delaney and her twin sister were born prematurely at 25 weeks on September 26, 2016 at Clear Lake Regional Medical Center. They were immediately transferred to the Neonatal Intensive Care Unit. While in the NICU, Delaney was treated for respiratory distress syndrome, apnea, patent ductus arteriosus, grade 1 intraventricular hemorrhage on the right, slow, GI mobility, pulmonary edema, hyperbilirubinemia, and anemia requiring blood transfusions. On October 16, 2016, Delaney had an abnormal blood gas test showing her carbon dioxide level was 90. She was placed on a ventilator but the records do not indicate that any testing was done to determine whether Delaney had an infection. On October 23, 2016, Delaney passed away. The cause of death was septic shock caused by a pseudomonas infection.

Standard of Care and Causation:

Defendants, Clear Lake Regional Medical Center, Dr. Harvinder Bedi, and Dr. Sandip K. Patel, were negligent in the following ways:

The standard of care for a doctor in the neonatal intensive care is to find the cause of the abnormal carbon dioxide level. The level of carbon dioxide that Delaney had on that day is almost always indicative of an infection in an infant such as Delaney. Delaney should have been started on antibiotics immediately. Failure to find the cause of the abnormal carbon dioxide level and start antibiotics on that day contributed to Delaney's untimely death from infection.

The standard of care for nursing in hospitals, especially in units with patients like Delaney, is to follow strict procedures to prevent the spread of infection. The standard of care for grooming related to fingernails, as stated in Clear Lake Regional Medical Center's procedures (Dress Code Policy — Section 1b(2)), states:

> Fingernails must be clean, neatly trimmed, and filed to avoid injuring patients or other employees. Fingernail polish in conservative colors may be worn. Extremely long, chipped or bright fingernail polish or bust designs are not permitted. Artificial and Gel nails are prohibited in clinical or patient areas due to safety and infection control issues.

Failing to adhere to established procedures causes the spread of infections. In an email sent to all Clear Lake Regional Medical Center employees dated October 27, 2017 and with the subject line Dress Code Fingernails, Facility Vice President of Quality Megan Fischer wrote:

> Effective **Monday 10/30/2017**, in accordance with our dress code policy we will be **enforcing compliance** with section 1b(2). In accordance with our HR policies, failure to comply with hospital policy will result in disciplinary action.

> Over the past several months **there has been an increase in hospital acquired infections**. A contributing factor in **reducing the risk** of hospital acquired infections is **not wearing artificial nails** (such as gel nail polish, shellac, dip powder nails, nail tips, etc) and **short nail length**. To ensure we **take every precaution** to reduce the risk of hospital acquired infections, we will be enforcing the hospital's dress code policy section 7 beginning Monday 10/30/2017.

6

In the case of patients like Delaney, contraction of infections like pseudomonas often leads to death.[1]

We presume for the sake of argument that Dr. Bull stated the standard of care for the Hospital with sufficient specificity and that Dr. Bull specified the following standard of care for the Hospital: The Hospital's employees and agents must follow strict procedures to prevent the spread of infection, and the Hospital's employees and agents must follow section 1b(2) of the Hospital's dress code policy. Even under these presumptions, Dr. Bull never specifies in his report how the Hospital breached this standard of care. Dr. Bull never states that any nurse at the Hospital committed an act that violated strict procedures to prevent the spread of infection. Br. Bull does not say that the fingernails of any nurse at the Hospital ever violated section 1b(2) of the Hospital's dress code policy.

Dr Bull says that "[f]ailing to adhere to established procedures causes the spread of infections." But, in making this general statement, Dr. Bull does not say that any Hospital employee or agent failed to adhere to established procedures or that any Hospital employee or agent caused the spread of infections. Dr Bull also quoted an email sent to all Hospital employees that was dated October 27, 2017, more than a year after Delaney passed away. In this email a "Facility Vice President of Quality" states that (1) effective October 30, 2017, the Hospital will be enforcing compliance with section 1b(2); (2) failure to comply with this policy will result in disciplinary action; (3) "over the past several months" — which would be months after Delany passed away — there has been an increase in hospital-acquired infections; (4) a contributing factor in reducing the risk of hospital-acquired infections is not wearing artificial nails and short nail length; and (5) to ensure the Hospital takes every precaution to reduce the risk of hospital-acquired infections, the Hospital will be enforcing its dress code policy section 7

---

[1] emphasis and underlining in original.

7

beginning October 30, 2017. The quoted email does not contain any statement regarding the conduct of any Hospital agent or employee during the time Delaney was at the Hospital. The vice president does not refer to Delaney, the fingernails of any nurses who cared for Delaney or the time frame during which Delaney was at the Hospital. The vice president does not state that any Hospital agent or employee failed to follow strict procedures to prevent the spread of infection or failed to follow section 1b(2) of the Hospital's dress code policy.

On appeal the Cornett Parties assert that the Hospital's failure to enforce its dress code policy breached its standard of care resulting in Delaney's death. The Cornett Parties also state that "it is [Dr. Bull's] opinion that the failure to enforce the Dress Code Policy led to the death of Delaney." But, in his amended report, Dr. Bull never states that the Hospital failed to enforce its dress code policy, either during the time that Delaney was at the Hospital or at any other time.

On appeal, the Cornett Parties assert for the first time that because Dr. Bull's amended report is sufficient as to the standard of care, breach of that standard, and causation for a doctor in the neonatal intensive care, Dr. Bull's amended report suffices as to the Hospital because the Hospital is vicariously liable for the alleged negligence of its alleged agents, Dr. Bedi and Dr. Patel. Pleadings must give reasonable notice of the claims asserted. *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354–55 (Tex. 1995). The Hospital did not specially except to the Cornett Parties' live pleading. As a reviewing court, we are to liberally construe the petition to contain any claims that reasonably may be inferred from the specific language used in the petition and uphold the petition as to those claims, even if an element of a claim is not specifically alleged. *See id.* In making the assessment, we must look to the wording of the pleading; we cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. *City of Dickinson v. Stefan*, 611 S.W.3d 654, 662 (Tex. App.—Houston [14th

Dist.] 2020, no pet.). Applying this standard, we cannot conclude that the Cornett Parties pleaded that the Hospital is vicariously liable for the alleged negligence of Dr. Bedi or Dr. Patel because either doctor was acting as an agent of the Hospital at the time of the doctor's alleged negligence. *See City of Dickinson*, 611 S.W.3d at 662; *Lenox Barbeque and Catering, Inc. v. Metro. Transit Auth. of Harris County*, 489 S.W.3d 529, 536 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Liberal construction can be used to amplify a pleading but not to create a claim. *See City of Dickinson*, 611 S.W.3d at 662. The Cornett Parties' live pleading, liberally construed, does not allege that the Hospital is vicariously liable for the alleged negligence of Dr. Bedi or Dr. Patel based on an agency theory. Therefore, even presuming for the sake of argument that Dr. Bull's amended report contains sufficient information to inform Dr. Bedi and Dr. Patel of the specific conduct of each doctor called into question, that sufficiency does not mean that the amended report contains sufficient information to inform the Hospital of the specific conduct of the Hospital called into question. *See City of Dickinson*, 611 S.W.3d at 662.

Dr. Bull's amended expert report does not contain sufficient information within its four corners to (1) inform the Hospital of the specific conduct called into question and (2) provide a basis for the trial court to conclude that the Cornett Parties' claims against the Hospital have merit. *See Baty*, 543 S.W.3d at 693–94; *Pinnacle Health Facilities XV, LP v. Robles*, No. 14-15-00924-CV, 2017 WL 2698498, at *2–4 (Tex. App.—Houston [14th Dist.] Jun. 22, 2017, no pet.) (concluding that trial court erred in denying facility's motion to dismiss because export report contained no facts showing how the facility's staff breached the standard of care) (mem. op.); *Kingwood Pines Hosp., LLC v. Gomez*, 362 S.W.3d 740, 748–50 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (concluding that trial court erred in denying hospital's motion to dismiss because export report did not adequately describe the alleged breaches of the standard of care). Under the

applicable standard of review we conclude that the trial court abused its discretion in determining that as to the Hospital Dr. Bull's amended report is an objective good-faith effort to comply with the definition of an expert report provided in section 74.351(r)(6). *See Pinnacle Health Facilities XV, LP*, 2017 WL 2698498, at *2–4; *Kingwood Pines Hosp., LLC*, 362 S.W.3d at 748–50. Accordingly, we sustain the Hospital's sole appellate issue to the extent the Hospital challenges the trial court's ruling based on the insufficiency of Dr. Bull's amended report as to the breach of the standard of care.[2]

## IV. CONCLUSION

The trial court abused its discretion in (1) determining that as to the Hospital Dr. Bull's amended report is an objective good-faith effort to comply with the definition of an expert report provided in section 74.351(r)(6), and (2) denying the Hospital's motion to dismiss. Therefore, we reverse the part of the trial court's order in which the trial court denies the Hospital's motion to dismiss, and we remand this case with instructions to the trial court (1) to dismiss the Cornett Parties' claims against the Hospital with prejudice under section 74.351(b), (2) to conduct further proceedings to determine the amount of reasonable attorney's fees that should be awarded to the Hospital under this statute, and (3) to award the Hospital reasonable attorney's fees and court costs incurred by the Hospital.


/s/    Randy Wilson
Justice

Panel consists of Justices Zimmerer, Poissant, and Wilson.

---

[2] Having determined that Dr. Bull's amended report is insufficient as to the Hospital's alleged breach of the standard of care, we need not and do not address the Hospital's argument that Dr. Bull's amended report is insufficient as to causation.